UNITED STATES of America,
Appellant,

v.

GWI PCS 1, INC., et al., Appellees.

No. CIV.A. 3:98–CV–1704L.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 27, 1999.

Frank W. Hunger, Assistant Attorney General, Washington, DC, Paul E. Coggins, United States Attorney, Fort Worth, TX, Myrna B. Silen, Assistant United States Attorney, Northern District of Texas, Dallas, TX, J. Christopher Kohn, Sandra P. Spooner, Lloyd H. Randolph, William Alvarado Rivera, E. Kathleen Shahan, Washington, DC, Peter B. Miller, Civil Division, U.S. Department of Justice, Washington, DC, for Appellant.

Deborah L. Schrier–Rape, Dallas, TX, John A. Lee, Houston, TX, Greg Bevel, Dallas, TX, Michelle V. Larson, Andrews & Kurth L.L.P., Dallas, TX, for subsidiary debtors.

Joseph J. Wielebinski, Dallas, TX, Raymond J. Urbanik, Munsch Hardt Kopf Harr & Dinan, P.C., Dallas, TX, for GWI PCS, Inc. and General Wireless, Inc.

## ORDER

LINDSAY, District Judge.

Before the court are the appeals of two rulings by the United States Bankruptcy Court, an order confirming the debtors' plan of reorganization ("Confirmation Order"), and a final judgment avoiding a portion of a claim by a creditor against the debtors ("Avoidance Judgment"). The

United States of America, on behalf of the Federal Communications Commission ("FCC"), appeals both of the bankruptcy court's rulings. The debtors have filed a cross-appeal of a portion of the Confirmation Order. The appeals of the two orders have been consolidated into this single case, Civil Action No. 3:98–1704–L.

## I. *Factual and Procedural Background*

GWI PCS, Inc. (GWI PCS) made the successful bid of over one billion dollars for air spectrum wireless telecommunication frequency licenses in an auction by the FCC in May of 1996. Upon being named a winning bidder, GWI PCS was required to bring its total down payments up to 5% of its bid amount, $53 million. At GWI's request, the FCC issued the licenses in the names of the 14 subsidiary debtors. The licenses were subsequently awarded to the 14 subsidiary debtors in January of 1997. By that time, the market value, and accordingly the value of the licenses, had declined precipitously. Nevertheless, Debtors then paid the required additional 5% of the bid amount, an additional $53 million, bringing their total payment to $106 million.

The subsidiary debtors, 14 GWI PCS, Inc. subsidiaries, filed for bankruptcy in October of 1997, and challenged their obligation to pay the bid price for the licenses as fraudulent conveyances, claiming that they had received less than the reasonably equivalent value and became insolvent because of such. In January of 1998, GWI PCS, Inc. and General Wireless, Inc. likewise filed for bankruptcy and joined the subsidiary debtors in bankruptcy.

On June 4, 1998, the Bankruptcy Court entered a final judgment on the subsidiary debtors' and GWI PCS, Inc.'s avoidance claims against the FCC which reduced their obligations to the United States to $60 million. The United States appeals that judgment and unsuccessfully attempted to stay the judgment. On September 10, 1998, the Bankruptcy Court entered its order confirming the plans of reorganization for General Wireless, Inc., GWI PCS, Inc., and for the subsidiary debtors. The United States also appeals that order. The United States secured temporary stays of those decisions, expiring September 30, 1998, but were unsuccessful in securing lengthier stays. The United States appeals the Avoidance Judgment, which reduced its claim against the debtors by over $900 million, and the Confirmation Order. Debtors cross-appeal a portion of the Confirmation Order.

## II. *Debtors' Motion to Dismiss Appeals*

On October 29, 1998, the debtors filed a motion, and brief in support thereof, to dismiss the appeal of the Confirmation Order and partially dismiss the appeal of the Avoidance Judgment. On November 12, 1998, the United States filed an opposition to the motion to dismiss. On November 30, 1998, the debtors filed their reply to the United States' opposition to the motion to dismiss. On January 22, 1999, with leave of the court, the United States filed its surreply in further support of its opposition to the motion to dismiss. The debtors seek to dismiss the appeal of the Confirmation Order and partially dismiss the appeal of the Avoidance Judgment because of equitable mootness. They argue that the failure of the United States to obtain a continuing stay has resulted in the implementation and substantial consummation of the debtors' plan. They state that numerous third parties have acted in reliance on the Avoidance Judgment and the Confirmation Order, payments have been made, settlements consummated, and obligations incurred.

Debtors also assert that dismissing the appeals as moot is in the public's interest because the public will benefit if they are allowed to reorganize and implement their business plan. Such will make low cost wireless service available to everyone in their markets, with bundles of air time minutes at prices which are not available

today, thus providing service to parties for whom cellular service is not currently affordable.

The United States asserts that the doctrine of equitable mootness should not apply because Debtors do not have an operating business and there exists a litigation alternative plan. It also insists that the equities do not merit dismissal and that the significant issues raised by its appeal are compelling reasons to reach the merits thereof.

█ In evaluating whether the appeal of a reorganization plan in a bankruptcy case is moot, the court examines whether: 1) a stay has been obtained, 2) the plan has been substantially consummated, and 3) the relief requested would affect either the rights of parties not before the court or the success of the plan. *In re U.S. Brass Corp.*, 169 F.3d 957 (5th Cir.1999); *In re Berryman Products, Inc.*, 159 F.3d 941, 944 (5th Cir.1998); *In re Manges*, 29 F.3d 1034, 1039 (5th Cir.1994), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1105, 130 L.Ed.2d 1071 (1995).

The United States attempted to obtain a stay of the Avoidance Judgment and the Confirmation Order. On July 30, 1998, the United States filed a motion to stay the operation or enforcement of the Avoidance Judgment; however, on August 7, 1998, the district court denied the motion. After the Confirmation Order was entered on September 10, 1998, the United States immediately filed an emergency motion for a stay pending appeal from the bankruptcy court's orders avoiding FCC claims and confirming reorganization. A temporary stay was granted through September 30, 1998. On September 25, 1998, the United States filed a motion to extend the temporary stay. On September 30, 1998, the court denied the United States' motions for stay. The United States secured a stay from Chief Judge Politz of the Fifth Circuit Court of Appeals on September 30, 1998. On October 7, 1998, that stay was lifted by the Fifth Circuit, and the United States' emergency petition for stay pending resolution of appeals, which was treated as a writ of mandamus, was denied by the Fifth Circuit. Thus the United States vigorously sought to obtain a stay to prevent the reorganization plan from going into effect.

█ Vigorously, though unsuccessfully, seeking to obtain a stay of a confirmed reorganization plan is not equivalent to actually obtaining such a stay. "A stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization." *In re Manges*, 29 F.3d at 1040, citing *In re UNR Industries*, 20 F.3d 766, 770 (7th Cir.), *cert. denied*, 513 U.S. 999, 115 S.Ct. 509, 130 L.Ed.2d 416 (1994). The failure or inability to obtain a stay pending appeal carries the risk that review may be precluded because of mootness. *Id.* The United States was unable to obtain a stay, beyond the temporary stay that expired on September 30, 1998.

█ The next question in the mootness inquiry is whether the reorganization plan has been substantially consummated. Pursuant to 11 U.S.C. § 1101(2), "substantial consummation" means:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

" 'Substantial consummation' is a statutory measure for determining whether a reorganization plan may be amended or modified by the bankruptcy court." *In re Manges*, 29 F.3d at 1040. The court "may 'decline to consider the merits of confirmation when a plan has been so substantially consummated that effective judicial relief is no longer available—even though the parties may have a viable dispute on ap-

peal.'" *In re U.S. Brass Corp.*, 169 F.3d at 960, quoting *In re Berryman Products, Inc.*, 159 F.3d at 944.

Debtors cite numerous extensive financial transactions that have been conducted based upon the reorganization plan since the Fifth Circuit denied the United States' request for a stay. These transactions include the following:

1. Equity investors have funded approximately $5.1 million into Debtors;

2. Equity investors have signed notes payable to Debtors with a face amount of approximately $5.1 million, and Debtors have drawn upon $4.4 million of those funds;

3. Lucent Technologies (Lucent) has funded $30 million into Debtors;

4. Debtors paid $28 million to Hyundai Electronics of America;

5. Debtors funded their contemplated professional fees;

6. Debtors paid $150,000 to retain Prudential Securities, Inc., as financial advisor and lead manager of their high yield debt offering;

7. Debtors paid unsecured creditors holding allowed claims their initial distribution;

8. Debtors paid the large majority of remaining administrative expenses;

9. Debtors issued $5 million in preferred stock;

10. The subsidiary debtors signed new notes and security agreements in favor of the FCC;

11. Debtors paid the FCC the first installment on the licenses, approximately $2 million;

12. Debtors have paid their regular operating expenses, including payroll, payroll taxes, property and equipment lease payments, and other normal operating expenses;

13. Debtors have paid $1.6 million to Lucent in commitment fees on the credit facilities provided by Lucent;

14. Debtors have entered binding contracts by executing purchase orders to acquire $3 million of fast start services to design and construct their wireless network;

15. With the assistance of Lucent, Debtors have begun implementation of the design plans for their network and have purchased sophisticated equipment for use therein;

16. Debtors have employed Arthur Andersen to perform audit services for 1997 and 1998, and have incurred over $40,000 for such services; and

17. Debtors have incurred other post-consummation liabilities, such as professional fees, in connection with the preparation of the offering memorandum of over $150,000.

▪ Although the United States agrees that these transactions have taken place, it does not believe that they constitute substantial consummation. The court disagrees. Upon review of the pleadings filed and the appellate record, the court concludes that the reorganization plan has been substantially consummated because substantially all of the property proposed by the plan to be transferred has been transferred, Debtors are managing substantially all of the property dealt with by the plan, and distribution under the plan has commenced. The United States also disputes substantial consummation because the Litigation Alternative exists as a part of the confirmed reorganization plan. Again, the court disagrees. As discussed above, the court concludes that substantial consummation of the plan, by way of the Business Alternative, has already taken place irrespective of the possibility of implementation of the Litigation Alternative whereby the licenses would be returned to the FCC, and litigation for the benefit of creditors and equity would be initiated to attempt to recover the payments made by Debtors to the FCC. Accordingly, the

second factor also weighs in favor of dismissal of the appeal as moot.

Finally, the court must determine whether the granting of relief on appeal would affect the rights of third parties not before the court or the success of the plan. Upon review of the pleadings filed and the appellate record, the court concludes that the granting of the relief which the United States seeks on appeal would affect the rights of third parties not before the court and the success of the plan. The various investors and entities which have consummated transactions with Debtors since the entry of the Confirmation Order, and the confirmation plan itself, would be detrimentally affected if Debtors were suddenly obligated to the FCC for an additional $900 million. The third factor, therefore, weighs in favor of dismissal of the appeal as moot.

■ For the reasons stated above, Debtors' motion to dismiss the United States' appeal of the Confirmation Order and partially dismiss the United States' appeal of the Avoidance Judgment is **granted**. Accordingly, the United States' appeal of the Confirmation Order is dismissed, and the United States' appeal of the Avoidance Judgment is dismissed to the extent requested by Debtors.

■ With respect to the remaining issues raised by the United States' appeal of the Avoidance Judgment, the bankruptcy court's findings of fact are examined under the clearly erroneous standard, while its legal determinations are reviewed under the de novo standard. *In re Sewell,* 180 F.3d 707, 710 (5th Cir.1999). Based on these standards, after review of the pleadings, the appellate record, and the applicable authority, the court denies the United States' remaining claims with respect to the Avoidance Judgment. Accordingly, the bankruptcy court's Avoidance Judgment is in all things affirmed.

---

* That the United States did not file a reply to Debtors' response evidences to some extent a lack of its disagreement with the merits of Debtors' response. Moreover, in light of Rule

## III. *Debtors' Cross-appeal*

Debtors have filed a cross-appeal of the bankruptcy court's Confirmation Order. The United States filed a motion to dismiss the cross-appeal as untimely. The United States filed its motion to dismiss Debtors' cross-appeal, alleging that the notice was untimely filed. Debtors filed a response to the motion. The United States did not file a reply to Debtors' response.

On the final due date for the filing of Debtors' notice of appeal, Debtors mistakenly submitted their notice of appeal to the clerk of the district court rather than to the clerk of the bankruptcy court. The next day, the notice of appeal was forwarded to the bankruptcy court's clerk and was stamped as filed that day, one day late.

■ Bankruptcy Rule 8002(a) states, in pertinent part, "If a notice of appeal is mistakenly filed with the district court or the bankruptcy appellate panel, the clerk of the district court or the clerk of the bankruptcy appellate panel shall note thereon the date on which it was received and transmit it to the clerk and it shall be deemed filed with the clerk on the date so noted." Because Debtors' notice of appeal was received by the clerk of the district court on the last day for timely filing, it is deemed timely filed with the clerk of the bankruptcy court. Accordingly, the United States' motion to dismiss is **denied.***

Debtors' cross-appeal of the Confirmation Order complains of the bankruptcy court's modification of their plan of reorganization, requirement that Debtors reserve funds under the plan when the FCC's claim was disallowed, and determination that the FCC had an impaired claim due solely to the pendency of its appeal of the Avoidance Judgment. As stated previously, the bankruptcy court's findings of fact

---

8002(a), the court questions the seriousness of the Government's motion to dismiss the cross-appeal.

are examined under the clearly erroneous standard, while its legal determinations are reviewed under the de novo standard. *In re Sewell, supra.* Based on these standards, after review of Debtors' claims, the pleadings filed, the appellate record, and the applicable authority, the court denies Debtors' claims. Accordingly, the bankruptcy court's Confirmation Order is in all things affirmed.

#### IV. *Conclusion*

As stated above, the bankruptcy court's Avoidance Judgment and Confirmation Order are hereby **affirmed**, and all costs of appeal are taxed against the United States. The clerk is hereby directed to "prepare, sign and enter the judgment" pursuant to Bankruptcy Rule 8016(a).