EASTERBROOK, Circuit Judge.
 

 Jerome Baker and his family operated Bakco Data, Inc., which had a profit-sharing pension plan. When the firm encountered financial difficulties, Baker and three of his children borrowed from the plan and used the money as working capital for Bakco. Some of the checks were written directly to Bakco. The loans were not properly documented and exceeded permissible levels; the borrowers did not attempt to repay the loans; but at least disbursements did not exceed the borrowers’ vested balances and did not compromise other participants’ ac
 
 *638
 
 counts. Throwing good money after bad did not work; Bakco is defunct and Baker landed in bankruptcy. The question we must decide is whether the irregular transactions mean that the funds remaining in Baker’s pension account are unsheltered by ERISA’s anti-alienation rule, 29 U.S.C. § 1056(d)(1). LaSalle Bank, Baker’s largest creditor, asked the bankruptcy court to include Baker’s pension wealth in his bankruptcy estate. Relying on
 
 Patterson v. Shumate,
 
 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), Chief Bankruptcy Judge Schwartz demurred. 195 B.R. 386 (1996). District Judge Zagel affirmed, adopting Judge Schwartz’s opinion, and this further appeal is within our jurisdiction under 28 U.S.C. § 158(d).
 
 In re Barker,
 
 768 F.2d 191, 192-94 (7th Cir.1985).
 
 Barker
 
 construes former 28 U.S.C. § 1293(b), but the same principles govern under § 158. See
 
 In re Jones,
 
 768 F.2d 923, 925 n. 3 (7th Cir.1985).
 

 Section 541(c)(2) of the Bankruptcy Code of 1978, 11 U.S.C. § 541(c)(2), excludes from the debtor’s estate any property that is held in trust and subject to a restriction on transfer under “applicable nonbankruptcy law”. This language keeps out of the estate (and therefore out of creditors’ hands) property in which the debtor owns the trust’s beneficial interest, but subject to a spendthrift clause or some equivalent that prevents the debtor from converting a stream of future payments into a capital sum for current consumption.
 
 Patterson
 
 held that a pension trust subject to ERISA’s anti-alienation rule is like a spendthrift trust under state law, and that “applicable nonbankruptcy law” includes federal statutes as well as state law. Judge Schwartz assumed that if Bakco’s plan was “ERISA-qualified” (a term we discuss below), then the balance of Baker’s account is outside the bankruptcy estate given § 541(c)(2) and
 
 Patterson.
 
 It is not clear to us that this is so.
 
 Patterson
 
 holds that ERISA counts as “applicable nonbankruptcy law,” not that all the full balances in all ERISA-qualified plans are necessarily protected from creditors. Sometimes the employee is entitled to invade the principal of a defined-contribution plan for his own purposes — to take a loan that can be converted to a withdrawal by failure to repay, or to accelerate disbursement directly, as many plans provide once the employee reaches a specified age. Cf.
 
 In re Kochell,
 
 804 F.2d 84 (7th Cir.1986) (discussing individual retirement accounts). We do not read
 
 Patterson
 
 to say that money readily available to participants for current consumption necessarily is unavailable to repay debts. See Douglas G. Baird,
 
 The Elements of Bankruptcy
 
 44-45 (rev. ed.1993). But because the Bank does not argue, and the record does not suggest, that Baker lawfully could have withdrawn any of the funds remaining in his account at the time the bankruptcy case began, we do not pursue the question.
 

 Patterson
 
 states its holding this way: “a debtor’s interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate pursuant to § 541(c)(2)”. 504 U.S. at 765, 112 S.Ct. at 2250 What is an “ERISA-qualified” plan? The term does not appear in the statute, and its provenance is mysterious. Some plans are fax-qualified, a term of art meaning that contributions to the plan are deductible at the corporate level and not taxed to the employee until the plan distributes benefits. Taxation has nothing to do with the question at hand, however. Most likely, the Court used “ERISA-qualified” to mean “covered by Subehapter I of ERISA”. Not all pension plans need contain an anti-alienation clause. See 29 U.S.C. § 1003(b). Early in its opinion the Court referred to “the anti-alienation provision required for qualification under § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1)”. 504 U.S. at 755, 112 S.Ct. at 2244. Understanding “ERISA-qualified” to mean nothing more complex than “containing the anti-alienation clause required by § 206(d)(1) of ERISA” makes the phrase mesh with the topic of the opinion: whether ERISA is “applicable nonbankruptcy law”. (Perhaps the term “ERISA-qualified” has some significance elsewhere in the law; our discussion of its scope applies only to the question whether a creditor can reach funds in bankruptcy.)
 

 Subchapter I of ERISA covers every “employee benefit plan” established by an employer engaged in interstate commerce,
 
 *639
 
 with five exceptions. 29 U.S.C. § 1003(a) (coverage), § 1003(b) (exceptions). Bakco’s profit-sharing plan was an “employee pension benefit plan” within the meaning of 29 U.S.C. § 1002(2)(A) because it provides for deferred and retirement income, and under the definition in § 1002(3) an “employee pension benefit plan” is also an “employee benefit plan”. Bakco was engaged in interstate commerce, and none of the five exceptions applies, so ERISA covers the plan — which contains a proper anti-alienation clause. All of this is common ground between the parties. It follows that § 541(c)(2) of the Bankruptcy Code excludes the plan’s value from Baker’s estate in bankruptcy.
 

 LaSalle Bank observes that a trust can be an “employee pension benefit plan” only if it provides retirement income or deferred compensation “to employees”, § 1002(2)(A)(i), and the Bank insists that Baker is an “employer” rather than an “employee” because he owned a majority of Bakco Data’s stock. A sole proprietor cannot participate in an ERISA pension plan, see
 
 Giardono v. Jones,
 
 867 F.2d 409, 411-12 (7th Cir.1989), because then person and business are identical. Bakco was not a proprietorship, and its corporate existence must be respected.
 
 In re Deist Forest Products, Inc.,
 
 850 F.2d 340 (7th Cir.1988). Baker the person, and Bakco Data the corporation, are separate legal entities. Bakco Data was the “employer” and Baker the “employee.” To the extent
 
 In re Kaplan v. First Options of Chicago, Inc.,
 
 189 B.R. 882 (E.D.Pa.1995), and
 
 In re Hall,
 
 151 B.R. 412 (Bankr.W.D.Mich.1993), hold otherwise, we disapprove those decisions. Many closely held corporations insist that employees own stock (as do a few large corporations, such as United Air Lines); this does not prevent ERISA from regulating their pension plans. LaSalle Bank does not argue that disregard of the corporation’s existence would be justified under standard veil-piercing principles. See
 
 Sea-Land Services, Inc. v. Pepper Source,
 
 941 F.2d 519 (7th Cir.1991). Although the Department of Labor has issued a regulation stating that a corporation’s sole owner is not an “employee” for the purpose of activating Subchapter I of ERISA see 29 C.F.R. § 2510.3-3(c)(l), Baker was not Bakco’s sole equity investor; he owned but 50.9 percent of its stock. What is more, several courts of appeals have held, properly in our view, that this regulation means only that a one-person corporation must use a Keogh plan rather than an ERISA plan for its solitary employee; a firm with multiple employees may establish an ERISA pension or welfare plan in which the investor may participate. E.g.,
 
 Robinson v. Linomaz,
 
 58 F.3d 365, 368 (8th Cir.1995);
 
 Madonia v. Blue Cross,
 
 11 F.3d 444, 447 (4th Cir.1993). At one point the Bakco profit-sharing plan had 18 participants. That the list had been whittled down to Baker by the time this case commenced hardly distinguishes Baker’s case from Shumate’s — for Shumate was president and chairman of a closely held corporation, and, by the time of his bankruptcy, the only participant in the firm’s pension plan. 504 U.S. at 755, 112 S.Ct. at 2244.
 

 Baker violated his duties as one of the plan’s trustees. The plan states that loans must be requested in writing; Baker disbursed loans without written requests. The plan requires the consent of a participant’s spouse for any loan; on behalf of the plan, Baker made loans without obtaining this consent. The plan states that only one loan may be outstanding to one participant at a time; Baker made multiple loans to two participants, including himself. The plan requires borrowers to pledge the balance of their accounts as collateral; borrowers did not do this. The plan requires borrowers to repay principal and interest within five years, and to make payments at least quarterly. Borrowers from Bakeo’s plan did not repay a dime of principal, and only one borrower paid anything toward interest. The plan sets caps on the amount that could be borrowed; these were sometimes exceeded. Some loans were disbursed from the plan to Bakco rather than to the participant, as the plan requires. Many of the plan’s requirements are necessary under ERISA the Internal Revenue Code, or both. See 29 U.S.C. § 1108. So Baker may have exposed Bakco and himself to extra taxes, plus remedies (damages as well as criminal prosecution) for breach of fiduciary duties under ERISA — although most of the violations appear to be technical. (The plan could have written checks to the participants, who could have invested in Bak
 
 *640
 
 co without violating 29 U.S.C. § 1106; the lack of pledges did not prevent the plan from collecting by offsetting unpaid loans against the account balances; none of the participants’ spouses is complaining about the diminution of retirement income.) Nonetheless, violations of ERISA do not make ERISA inapplicable, as the Bank believes; if extensive violations of a federal law made that law go away, the rules would be chimerical. ERISA applied, and was violated; for purposes of
 
 Patterson,
 
 what matters is the application of ERISA’s subehapter I, rather than observance of its rules.
 

 The Bank believes that it is inequitable for a plan fiduciary to flout his duties and then invoke ERISA as a shield. Perhaps— although the Bank offers no reason to believe that Baker’s misconduct increased his apparent wealth and therefore induced the Bank to lend more. When it extended the credit that it seeks to collect from Baker’s (remaining) interest in Bakeo’s profit-sharing plan, the Bank knew or should have recognized that this wealth could not be reached in a bankruptcy action. Inequitable or not, however, the anti-alienation clause governs. There is no “equity” exception to § 1056(d)(1) of ERISA, or § 541(c)(2) of the Bankruptcy Code.
 
 Guidry v. Sheet Metal Workers National Pension Fund,
 
 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).
 

 Affirmed.