IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30109
(Summary Calendar)
_____

IN THE MATTER OF: MARTHA C. SEWELL,

Debtor,

CYNTHIA L. TRAINA,

Appellant,

versus

MARTHA C. SEWELL,

Appellee.

- - - - - - - - - -
Appeal from the United States District Court
for the Eastern District of Louisiana
- - - - - - - - - -
July 27, 1999

Before JOLLY, SMITH, and WIENER, Circuit Judges.

WIENER, Circuit Judge.

In this bankruptcy appeal, Appellant Cynthia L. Traina, Chapter 7 trustee ("Trustee") in the bankruptcy proceeding of Appellee Martha C. Sewell ("Debtor"), asks us to reverse the ruling of the bankruptcy court, which was affirmed by the district court, excluding from property of the estate the Debtor's beneficial interest in her employer's ERISA[1] retirement plan. The Trustee insists that the bankruptcy and district courts erred in allowing

_____

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.

that exclusion under § 541(c)(2) of the Bankruptcy Code,[2] even though the employer's plan is an ERISA plan[3] containing an ERISA-required anti-alienation provision,[4] because — as the result of alleged disqualifying acts by Debtor's employer — the subject plan is purported not to be <u>tax</u> qualified under applicable provisions of the United States Internal Revenue Code.[5] Concluding that an ERISA plan's tax qualification is not a prerequisite to exclusion of a participant's beneficial interest from her bankruptcy estate under § 541(c)(2), we affirm.

I.

Facts and Proceedings

The Debtor was a full-time employee of Home Care Center, Inc. ("Home Care"),[6] but was not a shareholder, director, officer, or highly-paid executive. Home Care sponsored a pension plan known as the Deferred Capital Compensation Plan and Trust (the "Plan"). The Debtor was a participant in the Plan, but was not a trustee,

---

[2]   11 U.S.C. § 541(c)(2).

[3]   29 U.S.C. § 1003(a).

[4]   Paragraph 12.5 of the subject Plan provides:  "NON-ASSIGNMENT or ALIENATION of BENEFITS:  No benefit or interest available hereunder will be subject to assignment or alienation, either voluntarily or involuntarily."  <u>See</u> <u>also</u> 29 U.S.C. § 1056(d)(1).

[5]   26 U.S.C. §§ 1 <u>et</u> <u>seq.</u>

[6]   A company concededly engaged in interstate commerce.

administrator, or other fiduciary.  Among other typical ERISA provisions, the Plan contains a clause restricting transfer of the Debtor's beneficial interest in the retirement trust.[7]  Also referred to as an anti-alienation or "spendthrift" clause, this provision is admittedly enforceable under ERISA.

Although the record does not contain evidence that the Plan was ever anything but presumptively qualified for tax purposes, neither is there record evidence that the Plan was ever formally disqualified for tax purposes by the Internal Revenue Service.  The Trustee, nevertheless, contends that specified acts —— "prohibited transactions" —— by Home Care or individuals acting for it caused the Plan not to be tax qualified at the times pertinent to this case.  Although we have doubts that an ERISA plan that is presumed to be tax qualified or has opted to obtain a tax qualification letter from the IRS can become disqualified other than by the overt action of the IRS, we assume for purposes of today's de novo review (as have the parties and the bankruptcy and district courts) that the Plan is not tax qualified.

The Debtor takes the position that her beneficial interest in the Plan is excludable from her bankruptcy estate under § 541(c)(2) of the Bankruptcy Code.  This position is premised on the facts that her interest in the Plan, unquestionably a trust, is subject to a restriction prohibiting alienation (transfer) and that the

---

[7]  See supra note 4.

3

restriction is enforceable under ERISA, a nonbankruptcy law. Section 541(c)(2) provides:

> A restriction on the transfer of the beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.[8]

The Trustee objected to the Debtor's exclusion of her interest in the Plan, but the bankruptcy court overruled that objection on the basis of § 541(c)(2), holding that the Plan is "ERISA-qualified" and that its tax qualification — or lack thereof — is immaterial. Specifically, the bankruptcy court rejected the Trustee's contention that to be an "ERISA-qualified pension plan,"[9] the Plan had to be tax qualified under the Internal Revenue Code. The Trustee appealed to the district court, which affirmed the bankruptcy court. The Trustee then timely filed a notice of appeal to this court.

II.

Analysis

A.  Standard of Review

When a ruling by the bankruptcy court that has been appealed to and ruled on by the district court is appealed to us, we perform the same appellate review as did the district court: We examine the bankruptcy court's findings of fact under the clearly erroneous

---

[8]  11 U.S.C. § 541(c)(2).

[9]  Patterson v. Shumate, 504 U.S. 753, 765 (1991).

4

standard, and we examine that court's legal determinations under the <u>de</u> <u>novo</u> standard.[10] The sole issue on appeal of this case —— whether a bankruptcy debtor's beneficial interest in an ERISA retirement plan that contains an anti-alienation provision is excludable from the bankruptcy estate under § 541(c)(2) when the ERISA plan in question is not or may not be qualified for tax purposes under the Internal Revenue Code —— is purely a legal one. Consequently, our review in this case is plenary.

B.   <u>Property Excludable from the Bankruptcy Estate</u>

Under the well-known scheme of the Bankruptcy Code, all property and interests in property owned by the debtor at the time the petition in bankruptcy is filed (and, in some instances, for a short period prior thereto) are available to satisfy claims of creditors and costs of the proceedings <u>unless</u> such assets are (1) "excluded" from the bankruptcy estate altogether, or (2) included in the bankruptcy estate but "exempted" from use in satisfying claims of creditors and other authorized charges. As the Debtor in the instant case has claimed —— and the bankruptcy and district courts have allowed —— the <u>exclusion</u> of her beneficial interest in the Plan from her bankruptcy estate, we never reach the issue of <u>exemptions</u>: Exemptions come into play only when property is included in the bankruptcy estate and is sought to be used to satisfy claims of creditors; by definition, <u>excluded</u> property never

---

[10]   <u>Nationwide Mut. Ins. Co. v. Berryman Prods, Inc.</u> (<u>In re</u> <u>Berryman</u>), 159 F.3d 941, 943 (5th Cir. 1998).

5

forms part of the bankruptcy estate and thus need not to be tested for exempt status.

Under the equally well-known scheme of ERISA, provisions in Title 29 of the U.S. Code identify the various types of ERISA plans and specify what must be included in such plans; on the other hand, provisions in Title 26 specify what must be included in an ERISA plan for it to be "qualified" for tax purposes and thus be subject to special tax provisions that entitle the plan's sponsors and participants to tax benefits provided under ERISA. Obviously, ERISA is a largely parallel, dual system, jointly administered by the Department of Labor and the Department of the Treasury, and statutorily bifurcated into Titles 26 and 29 of the U.S. Code. Moreover, many provisions and requirements found in Title 29 are replicated in Title 26. Prominent among such twin provisions is the requirement that an ERISA employee pension benefit plan contain a restriction on alienation of the beneficial interests of the participants in the plan.[11] Clearly, an ERISA plan like Home Care's is required to have an anti-alienation clause; likewise, for such a plan to be "qualified" for tax purposes, it must contain an anti-alienation clause.

---

[11] Compare § 206(d)(1) of ERISA, which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated," 29 U.S.C. § 1056(d)(1), with § 401(a)(13) of the Internal Revenue Code, which states as a general rule that "[a] trust shall not constitute a qualifed trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated," 26 U.S.C. § 401(a)(13).

Nowhere in ERISA, however, is there a requirement that, to be an ERISA plan and thus be governed by ERISA, a plan must be tax qualified. Indeed, the converse is true: An ERISA plan that is not or may not be tax qualified nevertheless continues to be governed by ERISA for essentially every other purpose.[12] It would be perverse, indeed, if the negligent or intentional act of an ERISA plan sponsor, administrator, or other fiduciary, that results in disqualification for tax purposes could, ipso facto, remove the plan —— and thus the beneficial interests of the employees/participants —— from the aegis of ERISA and its protections of the very interests for which the legislation was adopted and is administered in parallel by the Treasury and Labor Departments. The instant case is a perfect example: Were the rule otherwise, the Debtor's beneficial interest in her ERISA employee pension benefit plan, replete with restrictions on voluntary and involuntary alienation and thus facially excludable from the Debtor's bankruptcy estate under § 541(c)(2) of the Bankruptcy Code, could be stripped of all ERISA protection, including enforceable nonbankruptcy restrictions on transfer, by the failure of her employer —— beyond any control of the Debtor —— to maintain tax qualification of the Plan.

Although the excellent and comprehensive appellate briefs of the parties contain detailed analyses of the statutory and

---

[12] See, e.g., Baker v. LaSalle, 114 F.3d 636, 641 (7th Cir. 1997)("[V]iolations of ERISA do not make ERISA inapplicable.").

jurisprudential development of this area of the law, we are satisfied that consideration of two opinions — one from the United States Supreme Court and the other from the U.S. Court of Appeals for the Seventh Circuit — provide all the guidance and precedent needed to decide this appeal, which presents a matter of first impression in this circuit.

The question whether the beneficial interest of a debtor in an ERISA retirement plan and trust that contains an ERISA-appropriate and ERISA-enforceable restriction on transfer comes within the ambit of § 541(c)(2)'s exclusion was answered definitively and in the affirmative by the United States Supreme Court in Patterson v. Shumate.[13]   The Court held unequivocally that § 541(c)(2)'s requirement that a restriction on transfer of a beneficial interest of the debtor in a trust be enforceable "under applicable nonbankruptcy law" is not limited to enforceability under state law; it suffices that such a restriction in an "ERISA-qualified pension plan"[14] be enforceable under some federal law other than bankruptcy law — there, as here, ERISA.  In its opinion, however, the Court inadvertently opened another jurisprudential Pandora's Box when, for reasons that are not apparent to us, it coined the phrase "ERISA-qualified pension plan" which appears nowhere in ERISA's statutory language.  The phrase is neither a term of art

---

[13]   504 U.S. 753 (1992).

[14]   Id. at 765.

8

nor a defined term for purposes of ERISA. Moreover, § 541(c)(2) makes no reference to ERISA, much less to an ERISA-qualified plan. Nevertheless, one line of Patterson progeny comprises a body of jurisprudence concerning a question not answered in Patterson: Whether, to be "ERISA-qualified," the plan must be "qualified" for tax purposes.[15] For present purposes, it suffices to note that bankruptcy courts and district courts have answered that question both ways.

To date only one federal court of appeals has addressed the tax qualification issue head on: the Seventh Circuit, in Baker v. LaSalle.[16] The operable facts in Baker are on all fours with those we consider today.[17] Given the congruency of the cases, we find it appropriate to quote one lengthy but dispositive paragraph from Judge Easterbrook's opinion in Baker:

> Patterson states its holding this way: "a debtor's interest in an ERISA-qualified pension plan may be excluded from the property

---

[15] The ERISA plan considered in Patterson was tax qualified, so, alone, Patterson does not dispose of this aspect of the instant case.

[16] 114 F.3d 636 (7th Cir. 1997).

[17] Indeed, the equities — frequently a consideration in disposing of bankruptcy cases — weigh more heavily in favor of the Debtor here than they did for the plan participant in Baker. The employee whose beneficial interest in Baker's employee pension benefit plan was at issue there was a major stockholder in the company that sponsored the ERISA plan in question and was a party to transactions that brought that plan's tax qualification into question. In contrast, the Debtor here was a common law employee of the Plan's sponsor, Home Care, completely remote from the management of the Company and the Plan.

9

of the bankruptcy estate pursuant to § 541(c)(2)." 504 U.S. at 765, 112 S. Ct. at 2250. What is an "ERISA-qualified" plan? The term does not appear in the statute, and its provenance is mysterious. Some plans are tax-qualified, a term of art meaning that contributions to the plan are deductible at the corporate level and not taxed to the employee until the plan distributes benefits. Taxation has nothing to do with the question at hand, however. Most likely, the Court used "ERISA-qualified" to mean "covered by Subchapter I of ERISA." Not all pension plans need contain an anti-alienation clause. See 29 U.S.C. § 1003(b). Early in its opinion the Court referred to "the anti-alienation provision required for qualification under § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1)." 504 U.S. at 755, 112 S. Ct. at 2244. Understanding "ERISA-qualified" to mean nothing more complex than "containing the anti-alienation clause required by § 206(d)(1) of ERISA" makes the phrase mesh with the topic of the opinion: whether ERISA is "applicable nonbankruptcy law." (Perhaps the term "ERISA-qualified" has some significance elsewhere in the law; our discussion of its scope applies only to the question whether a creditor can reach funds in bankruptcy.)[18]

Quite literally, everything contained in the quoted paragraph from Baker applies here.

As Judge Easterbrook went on to observe, "Subchapter I of ERISA covers every 'employee benefit plan' established by an employer engaged in interstate commerce, with five exceptions."[19] Like the plan sponsor in Baker, Home Care is engaged in interstate commerce and none of these five exceptions applies to it. ERISA thus covers the Plan, which —— like the plan in Baker —— contains

---

[18]   Baker, 114 F.3d at 638.

[19]   Id. at 638-39.

10

an ERISA anti-alienation clause.  And, like the Seventh Circuit in Baker, we are satisfied that "§ 541(c)(2) of the Bankruptcy Code excludes the [P]lan's value from [the Debtor's] estate in bankruptcy."[20]

### III.

### Conclusion

We discern no reason to depart from the Seventh Circuit's analysis in Baker or to reach a different legal conclusion.  We agree with the Baker court that taxation and tax qualification of employee pension benefit plans have nothing to do with the bankruptcy exclusion at issue in this case.  Joining the Seventh Circuit, we hold for this Circuit that, for purposes of § 541(c)(2)'s exclusion of a debtor's non-transferable beneficial interest in an ERISA employee pension benefit plan such as Home Care's, the fact that the plan is not or may not be "qualified" for tax purposes does not preclude excludability.[21]

---

[20]  Id. at 639.

[21]  This opinion should not be construed as creating a per se rule for this Circuit, making excludable under § 541(c)(2) every beneficial interest of every participant in every ERISA retirement plan and trust that purports to restrict transfer. Patterson cannot be read as holding that the entire balance of every participant's beneficial interest in every "ERISA-qualified" plan and trust is ipso facto excludable from the bankruptcy estate of that participant, and this opinion should not be read that way either.  Like the Seventh Circuit in Baker, "[w]e do not read Patterson to say that money readily available to participants for current consumption necessarily is unavailable to repay debts."  Baker at 638.  For example, we can conceive of a provision in an ERISA trust entitling the participant "to invade the principal of a defined-contribution plan for his own purposes — to take a loan that can be converted

11

AFFIRMED.

---

to a withdrawal for failure to repay, or to accelerate disbursement directly, as many plans provide once the employee reaches a specified age....But because [the Trustee] does not argue, and the record does not suggest, that [the Debtor] lawfully could have withdrawn any of the funds remaining in [her] account at the time the bankruptcy case began, we do not pursue the question." Id.