EMILIO M. GARZA, Circuit Judge,
dissenting:
In contrast to the majority, I would not reach the merits of Constance Luongo’s claim for a refund. Instead, I would dismiss her action on the ground that, under 11 U.S.C. § 505(a)(2)(B), the bankruptcy court lacked jurisdiction over her refund claim. I find that the bankruptcy court’s jurisdiction extends only to claims for refunds that benefit the estate. The majority rejects this contention with a cursory analysis of the statute — simply reciting the statutory text, but relying on legislative history pertaining only to tax liability claims. In dispensing with the assertion that § 505 bars the bankruptcy court’s exercise of jurisdiction over this case, the majority - overlooks the plain meaning of the statute and the legislative history regarding the bankruptcy court’s jurisdiction over refund claims. '
It is a cardinal rule of statutory interpretation that we begin our analysis by examining the statute’s text. See INS v. Phinpathya, 464 U.S. 183, 189, 104 S.Ct. 584, 589, 78 L.Ed.2d 401 (1984) (“This Court has noted on numerous occasions that in all cases involving statutory construction, our starting point must be the language employed by Congress, ... and we assume that the legislative purpose is expressed by the ordinary meaning of the words used.”) (quotations and citations omitted). Mere quotation of the statute does not satisfy this requirement; instead, we must give studied consideration to Congress’s words. Moreover, § 505 abrogates the government’s sovereign immunity,, requiring us to strictly construe it in favor of the sovereign. See 11 U.S.C. § 106 (expressly abrogating sovereign immunity where suits are brought pursuant to § 505); Dept. of the Army v. Blue Fox, 525 U.S. 255, 261, 119 S.Ct. 687, 691, 142 L.Ed.2d 718 (1999) (statutes abrogating sovereign immunity are to be strictly construed).
Section 505(a)(1) is a grant of jurisdiction, providing that:
*337 Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
(Emphasis added). I agree with the majority that the word “may” in § 505(a)(1) arms the bankruptcy court with the discretion to exercise the jurisdiction granted to it by § 505. This grant of jurisdiction is, however, limited. The prefatory phrase “[e]xcept as provided in paragraph (2) of this subsection” expressly limns this grant of discretionary jurisdiction to those cases that are not within the parameters established by paragraph (2). Even if (a)(1) did not contain this explicit exception, paragraph (2) begins by stating that the “court may not so determine” those cases set out in (2)(A) and (B). In its rules of construction, the Bankruptcy Code provides that “ ‘may not’ is prohibitive, and not permissive,” making clear that the bankruptcy court is prohibited from deciding cases in (2)(A) and (B). 11 U.S.C. § 102(4). Furthermore, our circuit has previously accepted that paragraph (2) limits the bankruptcy court’s jurisdiction, requiring us to determine whether the case at hand falls within the circumstances set out by that paragraph. See In re Armstrong, 206 F.3d 465, 474 (5th Cir.2000) (holding that the bankruptcy court lacked jurisdiction to consider a refund claim where the trustee failed to comply with § 505(a)(2)(B)); Tex. Comptroller of Pub. Accounts v. Trans State Outdoor Adver. Co. (In re Trans State Outdoor Adver. Co.), 140 F.3d 618, 620 (5th Cir.1998) (holding that if the chapter 11 debtor’s tax liability claim fell within § 505(a)(2)(A), the bankruptcy court lacked jurisdiction to consider the claim); Internal Rev. Serv. v. Teal (In re Teal), 16 F.3d 619, 622 (5th Cir.1994) (“Simply stated § 505(a)(2)(A), a jurisdictional statute, is mandatory”). Consequently, the plain meaning of the text compels us to examine whether § 505(a)(2) deprives the bankruptcy court of jurisdiction.
Section 505(a)(2)(B) provides that:
the court may not so determine
(B) any right of the estate to a refund, before the earlier of—
(i) 120 days after the trustee properly requests such refund from the governmental unit from which the refund is claimed; or
(ii) a determination by such governmental unit of such request.
Luongo claims that the IRS owes her a refund. Subparagraph (B) is the only provision in § 505 that addresses “refund” claims. Hence, subparagraph (B) must be the starting place for determining whether the bankruptcy court has jurisdiction over Luongo’s claim. See Constable Terminal Corp. v. City of Bayonne, N.J. (In re Constable Terminal Corp.), 222 B.R. 734, 737 (Bankr.D.N.J.1998) affd In re Constable Terminal Corp., 246 B.R. 181 (D.N.J. 2000) (“Clearly, when addressing whether a court may grant a debtor a tax refund, the court’s decision of the issue must begin with the language of § 505(a)(2)(B).”); see also Roberts v. Sullivan County (In re Penicing Trust), 196 B.R. 389, 394 (Bankr. E.D.Tenn.1996) (noting Congress’s “distinctive treatment” of refund claims).
Subparagraph (B) establishes three conditions precedent to a bankruptcy court’s jurisdiction over refund claims. First, refund claims must be properly requested from the relevant governmental unit. See 11 U.S.C. § 505(a)(2)(B)(i). In order to “properly request” a refund, a trustee must comply with the refund procedures set forth by the government from which it seeks a refund. See In re Armstrong, 206 *338 F.3d at 472 (“A ‘proper request’ [for a refund] under the Internal Revenue Code requires compliance- with [26 U.S.C.] §§ 7422 and 6511”); Roberts, 196 B.R. at 396 (“A ‘proper’ request under § 505(a)(2)(B) connotes correctness and dictates conformity with the pertinent taxing authority’s mechanism for seeking a refund.”). Failure to do so deprives the bankruptcy court of jurisdiction. See In re Armstrong, 206 F.3d at 472 (finding that where the trustee failed to comply with Internal Revenue Code procedures for requesting a refund, the bankruptcy court lacked jurisdiction to hear the refund claim); City of Perth Amboy v. Custom Distrib. Servs., Inc. (In re Custom Distrib. Servs., Inc.), 224 F.3d 235, 243-44 (3d Cir.2000) (holding that where the chapter 11 debtor failed to comply with state procedural requirements, the bankruptcy court lacked jurisdiction to hear the refund claim). Second, the subparagraph sets out when in time the bankruptcy court may exercise jurisdiction over a refund claim. The bankruptcy court can act once the relevant governmental unit reaches a determination on the claim or after the passage of 120 days from the date on which the trustee máde his request, whichever is earlier. Thus, these two preconditions operate as an exhaustion requirement, mandating that the trustee allow the governmental unit to receive and act on the refund claim, although it must act within 120 days, before the bankruptcy court can exercise jurisdiction over the refund claim.
Third, and most important for this case, the text and purpose of subparagraph (B) tell us what kind of refund claim the bankruptcy court has jurisdiction to consider when the first two conditions have been met: a refund claim brought for the benefit of the estate. Section 505(a)(2)(B) refers to the “right of the estate to a refund.” The estate encompasses the property outlined in 11 U.S.C. § 541, which will be used to pay the creditors. See 5 Collier on Bankruptcy ¶ 541. 01 (15th ed.1999). “Congress is presumed to know the meaning of the words it uses, especially in highly complex and intricate statutory schemes.” United States v. Sotelo, 436 U.S. 268, 286-87, 98 S.Ct. 1795, 1806, 56 L.Ed.2d 275 (1978) (Rehnquist, J. dissenting); cf. Molzof v. United States, 502 U.S. 301, 307, 112 S.Ct. 711, 716, 116 L.Ed.2d 731 (1992) (“ ‘[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.’ ”) (quoting Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952)). The Bankruptcy Code is such a statutory scheme, and the word “estate” does not include what Luongo seeks through her action — a refund solely for her own benefit.[1] We must presume *339 that in using the phrase “right of the estate,” Congress intended for this to be the only type of refund claim,encompassed by § 505(a)(2)(B).
The modification of refund with “the right of the estate” also contrasts sharply with § 505(a)(l)’s “any tax, any fine ..., or any addition to a tax” language. This difference illustrates that had Congress intended to refer to refund claims generally, it could have done so. See also Hartford Underwriters Ins. v. Union Planters Bank, N.A., 530 U.S. 1, 7, 120 S.Ct. 1942, 1947-1948, 147 L.Ed.2d 1 (2000) (in interpreting 11 U.S.C. § 506, finding that “had Congress intended the provision to be broadly worded, it could simply have said so, as it did ... in other section of the Code.”). This difference in language also accounts for the fact that the debtor can bring a claim for a determination of his tax liabilities, but cannot bring a refund claim that inures only to his benefit. Further, if we were to adopt the majority’s position we would read the words “right of the estate” out of the statute, a result eschewed in statutory interpretation. See 2A Sutherland Statutory Construction § 46.06 (5th ed. 1992) (“A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous.”)
Additionally, in setting forth who requests the refund claim, the statute refers only to the trustee. See 11 U.S.C. § 505(a)(2)(B). Congress’s failure to require that the debtor make such a request cannot be seen merely as an omission because, as the Supreme Court noted in construing § 506 of the Code, “the fact that the sole party named- — the trustee — has a *340 unique role in bankruptcy proceedings makes it entirely plausible that Congress would provide a power to Mm and not others.” Hartford Underwriters Ins., 530 U.S. at 7, 120 S.Ct. at 1947. So too it is entirely plausible here that Congress entrusted this responsibility only to the trustee.[2] Moreover, giving this responsibility to the trustee implies the refund claim will be one benefitting the estate because the trustee’s duty is to act for the benefit of the estate, i.e., for the benefit of the creditors.[3] As a result, the text’s delegation solely to the trustee the duty to properly request the refund claim considered in tandem with the statute’s reference only to “the right of the estate to a refund” demonstrates that § 505(a)(2)(B) concerns only a refund that benefits the estate.
The purpose of § 505(a)(2)(B), as expressed in its text, demonstrates that the text’s singular focus on a refund that benefits the estate limits the bankruptcy court’s jurisdiction over refund claims to those claims benefitting the estate that have been properly requested and the tax authority has been permitted 120 days to act upon that request. As described above, the first two conditions precedent form an exhaustion requirement. This requirement compels the trustee to first avail himself of the refund procedures provided by the government from which he seeks a refund and allows the government to act first with respect to that claim, rather than being subjected automatically to the bankruptcy court’s jurisdiction. See Roberts, 196 B.R. at 392 (“The purpose of *341 § 505(a)(2)(B) is to afford the taxing authority a reasonable opportunity to review any refund claim under its normal procedures.”); St. John’s Nursing Home, Inc. v. City of New Bedford (In re St. John’s Nursing Home), 169 B.R. 795, 800 (D.Mass.1994) (“Section 505(a)(2)(B) is thus designed to ‘give the taxing authorities time to act on a refund request.’ ”) (quoting Benjamin Weintraub and Alan N. Resnick, Bankruptcy Law Manual, ¶ 5.09 (3d ed.1992)). Imposing such a requirement on refunds as opposed to tax liabilities is particularly important from the government’s perspective. When a debtor or a trastee seeks a determination of tax liabilities, he is asking the bankruptcy court to fix what he owes to the government. Where this occurs, the government may receive payment. More importantly, it will not be making a payment to the debtor or the estate. In contrast, when a trustee calls upon the bankruptcy court to resolve the estate’s refund claim, the trustee anticipates the receipt of a payment from the government. At the resolution of such a claim, the government, be it federal or local, may have to make a payment when the money it has received from the debtor may have already left its coffers. See City of Perth Amboy, 224 F.3d at 243 (“[§ 505(a)(2)(B)(i) ] is also a recognition of the havoc that would be visited on the financial stability of a municipality if it were forced to refund taxes paid years before”). If § 505(a)(2)(B) applied solely to the right of the estate to a refund, the debtor seeking a refund claim for her own benefit could go directly to the bankruptcy court without allowing the government the opportunity to examine the claim. Section 505(a)(2)(B)’s purpose offers no basis for allowing one refund claim to escape the government’s procedures but not the other. Cf. In re Dunhill Med., Inc., No. 92-37700, 1996 WL 354696 at *5 (Bankr. D.N.J. Mar.27,1996) (“A debtor should not be permitted to bypass” § 505(a)(2)(B)’s requirements “simply by classifying a claim as a ‘credit’ because the practical result of a credit is identical to that of a refund.”). Such a result frustrates the statute’s exhaustion purpose. Thus, that the text concerns only the estate’s right to a refund cannot be construed to mean that Luongo’s claim simply falls outside the reach of § 505(a)(2)(B) and within the bankruptcy court’s jurisdiction.[4] In light of this purpose and the text’s focus on the estate’s refund claims, the bankruptcy court’s jurisdiction must then be limited to refund claims brought for the benefit of the estate.[5]
*342 Implicit in the majority’s contention that this reading of § 505(a)(2)(B) is too constrained is the assumption that Congress could not have intended to so limit § 505(a)(l)’s broad grant of jurisdiction. The interaction between § 505(a)(1) and § 505(a)(2)(A) demonstrates otherwise. Section 505(a)(2)(B) provides that the court may not determine:
the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title
This exception recites the language of the last clause of paragraph (1) adding only the timing provision, i.e., “before the commencement of the case under this title.” Subparagraph (A) thus precludes the bankruptcy court from determining any tax liabilities contested and adjudicated pre-petition, cutting a broad swath from the general grant of jurisdiction and leaving only those claims contested subsequent to the beginning of the bankruptcy case to fall within the scope of the bankruptcy court’s jurisdiction. Given the substantial limitation subparagraph (A) places on the bankruptcy court’s jurisdiction, the assumption that Congress did not intend to so limit the bankruptcy court’s jurisdiction cannot be made.
Moreover, the majority contends that the above interpretation of § 505(a)(2)(B) contravenes Congress’s intent to provided a broad grant of jurisdiction over “tax issues” as evinced in the legislative history. In examining the legislative history, the majority focuses solely on the legislafive statements pertaining to taxes owed by the debtor or the estate. Specifically, the majority relies on two statements by Representative Edwards and Senator DeConcini. First, the majority relies on Representative Edwards’s statement that § 505 authorizes “the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to the tax or an addition to a tax, of the debtor or the estate.” 124 Cong. Rec. 32413; see 124 Cong. Rec. 34013 (1978) (Statement of Sen. DeConcini). Additionally, the majority points to Representative Edwards’s and Senator DeConcini’s statement that “the bankruptcy judge will have authority to determine which court will determine the merits of the tax claim both as to the claim against the estate and claims against the debtor concerning his personal liability for nondischargeable taxes.” 124 Cong. Rec. 32414 (1978) (statement of Sen. DeConcini); 124 Cong. Rec. 34014 (1978) (statement of Rep. Edwards). In these statements, the majority zeroes in on the phrases “of the debtor or the estate” and on “claims against the debtor concerning his liability for nondischargeable taxes” in order to show that Congress intended for the bankruptcy court to have jurisdiction over refund claims not affecting the estate. But these statements concern one kind of claim: one in which the debtor owes money to the government. The first quotation refers to “unpaid tax, fine, or penalty relating to a tax, addition to a tax.” All of these items connote the taxing authority’s right to a payment. Likewise, the second statement’s reference to “claims against the debtor” connotes the government’s right to a payment from the debtor. As such, these statements offer *343 little insight into Congress’s intent with respect to refund claims.
Representative Edwards’s and Senator DeConcini’s subsequent remarks clarify that § 505(a)(l)’s grant of jurisdiction is subject to paragraph (2)’s limitations. The Legislators note that the bankruptcy court “will not have jurisdiction to rule on the merits of any tax claim which has been previously adjudicated, in a contested proceeding, before a court of competent jurisdiction,” recognizing the exception to jurisdiction § 505(a)(2)(A) creates. More importantly, although conspicuously absent from the majority’s recitation of the legislative history, the Legislators addressed refund claims, stating:
the bankruptcy court can, under certain conditions, determine the amount of tax refund claim by the trustee. ... [I]f the refund results from an offset or counterclaim to a claim or request for payment by the Internal Revenue Service, or other tax authority, the trustee wold not first have to file an administrative claim for refund with the tax authority.
However, if the trustees requests a refund in other situations, he would first have to submit an administrative claim for the refund.... [I]f the Internal Revenue Service or other tax authority does not rule on the refund claim within 120 days, then the bankruptcy court may rule on the merits of the refund claim.
124 Cong. Rec. 34013 (1978) (Statement of Sen. DeConeini); 124 Cong. Rec. 32413 (1978) (Statement of Rep. Edwards) (emphasis added). The statement refers only to refund claims brought by the trustee and is devoid of any reference to the debtor. In contrast, the legislative history of § 505 is replete with references to the debtor where it discusses his debts. See, e.g., 124 Cong. Rec. 34013 (1978) (Statement of Sen. DeConeini) (“[A]n individual debtor can also file a complaint to determine dischargeability ... so that the bankruptcy court would then determine the validity of the claim against the assets in the estate and also the personal liability of the debtor for any nondischargeable debt.”) (emphasis added); 124 Cong. Rec. 32414 (1978) (Statement of Rep. Edwards) (summing up the interplay between the automatic stay provision and § 505’s grant of jurisdiction stating that “[i]n essence, ... the bankruptcy judge will have authority to determine which court will determine the merits of the tax claim both as to claims against the estate and claims against the debtor concerning his personal liability for nondischargeable taxes.”) (emphasis added). This juxtaposition between the discussion of refunds and the remainder of § 505 again implies that these refund claims are claims benefitting the estate, not the debtor personally. Furthermore, the legislators noted that the bankruptcy court can exercise jurisdiction over refund claims by the trustee only under “certain circumstances,” evincing congressional intent to limit the bankruptcy court’s jurisdiction over refund claims. Thus, the legislative history shows that Congress granted the bankruptcy courts only a limited role in adjudicating refund claims.
In short, the plain language and the legislative history demonstrate that the bankruptcy court has jurisdiction only to hear refund claims that benefit the estate and the government’s immunity has not been abrogated for the purposes of this suit. That § 505 does not provide the bankruptcy court with jurisdiction cannot be overcome, as Luongo suggested at oral argument, by § 106’s abrogation of immunity for actions brought under §§ 522, 542, 543, or 362. None of these sections concerns refunds. Because § 505 is an abrogation of sovereign immunity specifi *344 cally with respect to refunds, its grant of jurisdiction and the limitations on that jurisdiction control. See In re Armstrong, 206 F.3d at 470 (“One basic principle of statutory construction is that where two statutes appear to conflict, the statute addressing the relevant matter in more specific terms governs.”). Consequently, Luongo’s contention does not clefeat the conclusion to which the plain language of § 505 and its legislative history lead.
Finally, even if the majority’s view is correct and the bankruptcy court can exercise jurisdiction over Luongo’s refund claim, the bankruptcy court’s abstention is warranted. The text of § 505(a)(2)(B) plainly focuses on the right of the estate to a refund claim. Should the estate receive such a payment, it will benefit the creditors, making them the intended beneficiaries of § 505(a)(2)(B). While I agree with the majority that one of the broad purposes of the bankruptcy code is to provide debtors with a fresh start, I disagree that this broader purpose should trump § 505(a)(2)(B)’s more narrow purpose. Accordingly, even if the bankruptcy court had jurisdiction, I would find that abstention was warranted.
For the foregoing reasons, I would dismiss for lack of jurisdiction.

. In response to this contention, the majority asserts that the definition of the estate, as provided in § 541 undermines my construction of the words "right of the estate." The majority notes that § 541 defines property of the estate broadly to include property that the debtor may later declare exempt. Based on this definition, the majority asserts that the estate has a right to the refund claim at issue here and that its construction of § 505 does not read " 'the right of the estate’ out of the statute,” as I later contend it does. While the majority is correct that property that the debt- or may later declare, exempt is property of the estate, the majority's analysis fails to account for. the impact of- the exemption. The Supreme Court defined an exemption as "an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debt- or.” Owen v. Owen, 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991) (emphasis added); see Wischan v. Adler, 77 *339 F.3d 875, 877 (5th Cir. 1996) (“Although the 'proceeds of the pre-petition personal injury causes are initially property of the estate, some states and the federal government have created exemptions for them”) (emphasis added). The exempt property leaves the estate and vests in the debtor. See Bell v. Bell (In re Bell), 225 F.3d 203, 216 (2d Cir.2000) (“It is well-settled law that the effect of ... exemption is to remove property from the estate and vest it in the debtor.”); Mayer v. Nguyen (In re Nguyen), 211 F.3d 105, 107 & 109 (4th Cir.2000) (the operation of the exemption is to "exclude” the exempt property from the estate); In re Gamble, 168 F.3d 442, 443 (11th Cir.1999) ("exempt property is not part of the bankruptcy estate”); Seror v. Kahan (In re Kahan), 28 F.3d 79, 81 (9th Cir. 1994) ("The bankruptcy estate includes all of the debtor’s interests in property at the commencement of the case, except property that the debtor elects to exempt.”); Abramowitz v. Palmer, 999 F.2d 1274, 1276 (8th Cir.1993) (holding that where trustee failed to object to exemption, the trustee was "precluded from including” the property in the debtor’s bankruptcy estate); In re Yonikus, 996 F.2d 866, 870 (7th Cir.1993) ("[a]fter an asset is property of the estate ..., it can still past out of the estate (thus out of the reach of creditors) as a” § 522 exemption); Taylor v. Freeland & Kronz, 938 F.2d 420, 422 (3d Cir.1991) ("[T]he property so exempted is no longer considered property of the bankruptcy estate.”); Sherk v. Tex. Bankers Life & Loan Ins. Co. (In re Sherk), 918 F.2d 1170, 1174 (5th Cir. 1990) abrograted on other grounds by Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (exempt property "is no longer property of the estate”); Norton Bankruptcy Law and Practice 2d § 51:2 (2000) ("The debtor by acting affirmatively, may take the required action to set aside his or her exemptions. The court may determine what is appropriately exempted and what property remains in the estate.") (emphasis added); see also Graziadei v. Graziadei (In re Graziadei), 32 F.3d 1408, 1410 n. 2 (9th Cir. 1994) (bankruptcy court lacked jurisdiction over homestead property because it was exempt and therefore had no conceivable effect on the estate). But see Traina v. Sewell (In re Sewell), 180 F.3d 707, 710 (5th Cir. 1999) (contrasting excluded property with exempt property and noting that exempt property is "included in the bankruptcy estate but 'exempted from use in satisfying claims of creditors and other authorized charges'.”). Even the majority acknowledges that "exempted property is removed from the estate.” Thus, "the right of the estate” is properly construed as not including exempt property.

. Note, however, that the term trustee encompasses a debtor in possession. Federal Rule of Bankruptcy Procedure 9001.01(10) provides that "[tjrustee includes a debtor in possession in a chapter 11 case.” Under 11 U.S.C. § 1107, with certain exceptions "a debtor in possession shall have all the rights, ... and powers, and shall perform all the functions and duties, ... of a trustee in a case under” chapter 11. Here, Luongo is a chapter 7 debtor and a trustee has been appointed for the estate.

. The majority's response to my interpretation of § 505(a)(2)(B) fails to account for the delegation of the duty to properly request the refund to the trustee, instead treating the analysis as if its only support rested in the words "right of the estate.” It is not simply because the words "right of the estate” appear that § 505 is so limited, but also because the duty to request the refund is delegated to the trustee. The trustee's duty is to maximize the estate for the purposes of distribution to the creditors. See 6 Collier on Bankruptcy ¶ 704.02[3] (15th ed. 2000) ("[I]t is the trustee’s duty to both the debtor and the trustee to realize from the estate all that is possible for distribution among the creditors.") (emphasis added). In chapter 7 proceedings, the trustee’s main duty is to liquidate the estate as expeditiously as possible. See 11 U.S.C. § 704(1) (trustee is to "collect and reduce to money the property of the estate”). Further, with respect to exemptions, the Code grants the right of exemption to the debtor, not the trustee. See 11 U.S.C. § 522. The trustee, as a party in interest, has standing to object to the debtor's exemptions, and should object where the exemption is invalid and would deplete the value of the estate available for distribution to the creditors. Once the period for objections to the debtor's proposed exemptions passes and the property becomes exempt, the trustee has no interest in exempt property except to the extent that the property's value exceeds any applicable caps on the debtor’s exemption, in which case both the estate and the debtor have an interest in the property. See 11 U.S.C. § 522(1) (property declared exempt on the debtor’s schedules becomes exempt if there are no objections); Bankr.R. Proc. 4003 (providing thirty days in which to object). The Code recognizes that the trustee's and the debtor's interests diverge regarding exemptions by allowing the debtor to exempt property the trustee recovers, and, more importantly, by permitting the debtor to avoid transfers the trustee can avoid in the event the trustee fails to act. See 11 U.S.C. § 522(g) and (h). Thus, the delegation to the trustee the duty to properly request the refund claim is especially significant given the trustee’s and the debtor's roles with respect to exemptions.

. In quickly dispensing with the possible jurisdictional bar posed by § 505, the majority fails to note in the text of its opinion whether Luongo complied with § 505(a)(2)(B)’s requirements that a refund be properly requested and that the bankruptcy court wait for the government’s determination or 120 days after such a request to act (whichever may have occurred earlier). Thus, the majority implies that a debtor’s refund claim that benefits only the debtor is not bound by these conditions. As described in text, the purpose of subpara-graph (B) does not permit such a distinction.
In response to my dissent, the majority states in a footnote that Luongo has complied with the requirements of § 505(a)(2)(B). Hence, despite the implication of the majority’s initial discussion of § 505, the majority seems, to interpret § 505(a)(2)(B) as applying to Luongo’s claim. This interpretation is incorrect because it cannot overcome the text's focus on "the right of estate” together with the delegation to the trustee the responsibility for seeking a refund claim.

. The majority responds that other courts confronted with a debtor’s refund claim inuring only to the benefit of the debtor have not adopted the interpretation of § 505 I have set forth. In support of this contention, the majority points to United States v. Ryan (In re Ryan), 64 F.3d 1516 (11th Cir.1995) and Grib-ben v. United States (In re Gribben), 158 B.R. 920 (S.D.N.Y.1993). In In re Gribben, the court did not even broach the question of § 505's applicability to the case, let alone *342 offer an interpretation of that section. Although the court in In re Ryan at least discussed § 505, it merely recited the statutory text and from there concluded, without discussion, that the debtor need only meet § 505's exhaustion requirements in order for the bankruptcy court to have jurisdiction. See 64 F.3d at 1520-1521. Given the nonexistent or truncated analysis found in these two cases, I find them unpersuasive.