**In re Charles GOLDSCHEIN, Debtor.**

**Bankruptcy No. 97–1–2118–DK.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Feb. 10, 2000.

William L. Hallam, Baltimore, MD, for Bank of America, N.A.

Richard M. Weintraub, Baltimore, MD, for National Medical Services, Inc. Defined Benefit Pension Plan and Trust.

### MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

This case was commenced by the filing of a voluntary petition by Goldschein under Chapter 7 of the Bankruptcy Code on February 19, 1998. Related cases have

been filed on behalf of National Medical Supply, Inc. ("Supply"), National Medical Services, Inc. ("Services"), National Medical Services of Maryland, Inc. ("Maryland"), and National Medical Systems, Inc. ("Systems"), which are entities owned and controlled by Goldschein. NationsBank, N.A. ("NationsBank") holds allowed claims against the debtors in each of the affiliated cases and against Goldschein, pursuant to a guaranty executed by Goldschein. As a consequence, NationsBank is a creditor in this case and has standing to bring the objection to exemption.

On March 6, 1998, Goldschein filed Schedule C—Property Claimed as Exempt, asserting exemptions valued in the aggregate as $410,104.00, of which $400,000.00 was identified as defined benefit pension plan.[1] NationsBank's objection was upon three grounds. NationsBank first objected to the claim of exemption for the defined benefit pension asserting that the enumerated statutory reference for the exemption was non-existent and further speculating that if the exemption was as to benefits held by Goldschein in the National Medical Services, Inc. Defined Benefits Plan ("Pension Plan"), that such benefits were not exempt because the Pension Plan was not a retirement plan qualified under any of the applicable sections of the Internal Revenue Code referenced in Section 11–504(h) of the Court's & Judicial Proceedings Article of the Annotated Code of Maryland. Secondly, NationsBank objected to an excessive amount of exemption for household goods. Thirdly, the creditor objected to the values placed upon items claimed to be exempt under Section 11–504(b)(5) of the Courts & Judicial Proceedings Article of the Annotated Code of Maryland.

On July 1, 1998, Goldschein filed an amended Schedule C claiming exemptions in the aggregate amount of $451,742.75, including $439,000.00 of defined benefit pension benefits. NationsBank filed an objection to the amended exemptions incorporating by reference its objection to the claimed exemption as to the Pension Plan.

In response to the objection of NationsBank, the Pension Plan by counsel filed an opposition asserting that the Pension Plan was a defined benefit pension plan and trust pursuant to 26 U.S.C. § 401(a) (the Internal Revenue Code, hereinafter "Section 401(a)") and thus benefits thereunder were exempt under the terms of Section 11–504(h) of the Court's & Judicial Proceedings Article of the Annotated Code of Maryland. Attached to a supplement to this opposition is a letter dated July 27, 1994 ("Determination Letter"), from the Department of the Treasury of the United States containing a favorable tax qualification determination of the Pension Plan. Goldschein also filed an opposition to the Objection to the Amended Exemptions which incorporated by reference the opposition by the Pension Plan and further incorporated by reference the opposition filed by Goldschein to the original Objection to Exemptions.

On January 13, 1999, NationsBank filed a Motion for Summary Judgment on its Objections to Exemptions. In that motion NationsBank avers that there are no disputed material facts and that the evidence produced from discovery in this matter proves as a matter of law that the interest of Goldschein in the Pension Plan is not subject to exemption. Memoranda in opposition to the NationsBank Motion for Summary Judgment have been filed by the Pension Plan and asserted on behalf of the debtor.[2] NationsBank has filed replies to

---

1. Pleading no. 5. NationsBank in its initial objection (pleading no. 17) recites the amount as $410,122.00.

2. The Memorandum in Support of Debtor's Opposition to Motion for Summary Judgment avers that it is filed on behalf of Goldschein but is signed by Richard M. Weintraub, Esquire, as attorney for the Pension Plan. It thus appears not to be properly filed under Federal Rule of Bankruptcy Procedure 9011. Nonetheless, as the two oppositions to the Motion for Summary Judgment raise exactly the

the oppositions and the matter is now before the court for consideration.

Subsequent to the filing of NationsBank's Motion for Summary Judgment, the memoranda in opposition, and the replies thereto, Goldschein filed on July 26, 1999 an amended Schedule C claiming exemptions in the aggregate amount of $1,001,343.75, which included a claimed exemption of $439,000 in the Pension Plan. The newly amended Schedule C also claimed a $550,000 exemption in Goldschein's residence. Bank of America, successor-in-interest to NationsBank, and the Chapter 7 Trustee filed objections to the claim of exemption in the residence.

This Memorandum Opinion determines only the Motion for Summary Judgment which requested summary judgment as to the exemption asserted in the Pension Plan. The objections to the asserted exemption in Goldschein's residence will be separately determined.[3] The court finds that no hearing would aid the court in its determination of the Motion for Summary Judgment and Oppositions.

Federal Rule of Civil Procedure 56 is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9014, which applies Federal Rule of Bankruptcy Procedure 7056, and through it Federal Rule of Civil Procedure 56, to contested matters unless the court directs otherwise. FED. R. BANKR. P. 9014; FED. R. BANKR. P. 7056. Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Sylvia Dev. Corp. v. Calvert County, Maryland,* 48 F.3d 810, 817 (4th Cir.1995). In considering a motion for summary judgment the court must view all permissible inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir. 1992). Summary judgment is appropriate only if, taking the record as a whole, a trier of fact could not possibly return a verdict in favor of the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In its Objection to the Amended Exemption and as argued by its Motion for Summary Judgment, NationsBank asserts that the Pension Plan failed to be a qualified plan under Section 401(a) because the Pension Plan was not operated in accordance with the relevant statutory requirements. Specifically, NationsBank avers that the Pension Plan was not operated for the exclusive benefit of Service's employees and that the Pension Plan improperly discriminated in favor of Goldschein, the only officer of Services.

There are two prongs to NationsBank's assertion that the Pension Plan was not operated for the exclusive benefit of employees of Services. The first prong is that Kristina Goldschein, wife of Goldschein, is included as a participant in the Pension Plan even though she is not and has not been at any material time an employee of Services or any of the related companies. In support of this assertion NationsBank attaches to its memorandum, deposition transcripts of testimony of Kristina Goldschein and of Goldschein.[4] In her deposition, Kristina Goldschein testified that she could not recall any work or

same defenses, the court will not strike the opposition of Goldschein.

3. NationsBank's objections to the amount of household goods and valuation of property asserted in its original Objection to the original Schedule C, have not been asserted as to the amended Schedule C and second amended Schedule C and are deemed withdrawn.

4. Exhibit D and Exhibit E to the Memorandum in Support of Motion for Summary Judgment.

services which she provided to any of the National Medical companies. "No, no, I've never worked for them. I served coffee one time. Honestly, that's all I've ever done."[5] The inclusion of Kristina Goldschein as a beneficiary under the Pension Plan is further explained in the testimony of Goldschein:

Q. What was Mrs. Goldschein's position with National Medical Services?

A. I split my income with her so that she would receive social security benefits, paid part to her, part to myself. She was an owner.

Q. So you split the income?

Q. Did she have any duties at National Medical Services?

A. No, just an owner.

Exhibit E to Memorandum in Support of Motion for Summary Judgment, page 13, lines 20–21, page 14, lines 1–6.

Secondly, NationsBank asserts that none of the persons paid by Services as employees, were actually employed by Services. Because the employees allegedly employed by Services, were leased by Services to National Medical Systems, Inc. and other entities owned by Goldschein and their activities were solely directed by the alleged lessees, NationsBank argues that they were not legally employees of Services.

In addition, NationsBank objects to the allowance of the exemptions, asserting that the Pension Plan does not qualify because Goldschein utilized Pension Plan assets as his "personal piggy bank". NationsBank asserts that Goldschein obtained funds from the Pension Plan. Of those amounts, it is alleged that Goldschein received Thirty Thousand Dollars ($30,000.00) for which no documentation exists. In addition, Goldschein received approximately Four Hundred and Nine Thousand Dollars ($409,000) in loans, which were not approved in compliance with the applicable requirements of the Pension Plan and law, exceeded amounts which Goldschein should have been permitted to obtain, and were not secured as required by applicable Pension Plan requirements and law.

Although cast initially as an objection to allowance of amended exemption, the issue to be resolved has been bifurcated into two separate determinations. In its Memoranda, Goldschein/Pension Plan now argue that the Debtor's interests in the Pension Plan did not become property of the estate and thus are outside of the estate without regard to the allowance of the scheduled exemption. In the alternative, Pension Plan and Debtor argue that if the Debtor's interest in the Pension Plan came into the estate, Debtor's interest in the Pension Plan are properly exempt pursuant to Section 11–504(h) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, made applicable by 11 U.S.C. § 522(b)(2). The court must examine each of these arguments.

In *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the United States Supreme Court held that the Debtor's interest in an "ERISA-qualified" plan did not become property of the bankruptcy estate created by the commencement of a bankruptcy case because the anti-alienation provision contained in such a plan constituted a restriction on the transfer of a beneficial interest of the Debtor in a trust as set forth in 11 U.S.C. § 541(c)(2). The Supreme Court granted to a debtor's interest in an "ERISA-qualified" plan the same protection afforded to a debtor's interest in a spend-thrift trust under state law. However, the Supreme Court gave no definition of what constituted an "ERISA-qualified" plan.

Courts have disagreed as to the meaning to be given to the words "ERISA-qualified". "This phrase is not a term of art and is not defined in the bankruptcy code,

---

**5.** Exhibit D to Memorandum in Support of Motion for Summary Judgment, page 49, at line 14–16.

the Internal Revenue Code, or ERISA it-self." *In re Lawrence*, 235 B.R. 498, 506 (Bankr.S.D.Fla.1999)(citing *In re Hall*, 151 B.R. 412, 417 (Bankr.W.D.Mich.1993)).

The Employee Retirement Income Security Act of 1974 (ERISA) [6] was not created for the purposes of qualifying pension plans. The act was enacted "that minimum standards be provided assuring the equitable character of such plans and their financial soundness." 29 U.S.C. § 1001(a). The act intended to insure that "disclosure be made and safeguards be provided with respect to the establishment, operation and administration of such plans..." *Id.*

Employee pension plans to which the ERISA standards apply include a plan maintained by an employer that provides retirement income to employees, or results in a deferral of income by employees for periods extending to the termination of employment or beyond and which does not come within the exceptions set forth in 29 U.S.C. § 1003 (such exceptions being inapplicable to the plan in the instant case). 29 U.S.C. § 1002(2)(A); *Hall*, 151 B.R. at 419.

Some courts have held that in order to be "ERISA-qualified" and thus to have the Debtor's interests in the plan excluded from the bankruptcy estate under the reasoning of *Patterson v. Shumate*, the plan must be governed by ERISA, contain the anti-alienation provision required by that statute, and qualify for tax-deferral under 26 U.S.C. § 401. *In re Hall*, 151 B.R. 412 (Bankr.W.D.Mich.1993); *In re Lawrence*, 235 B.R. 498 (Bankr.S.D.Fla.1999).

Other courts have found that in order to meet the test of the words "ERISA-qualified", the plan must only be one which is governed by ERISA and contain the anti-alienation provision required by that statute. *In re Hanes*, 162 B.R. 733 (Bankr. E.D.Va.1994). Under this approach tax qualification is neither required nor relevant to the issue. *Id.* The United States Court of Appeals for the Fourth Circuit has not spoken as to this question.[7]

█ This court does not conclude that every plan which is governed by ERISA and contains the anti-alienation provision required by 29 U.S.C. § 1056(d) must also obtain tax qualification under 26 U.S.C. § 401 in order for a Debtor's benefits in such plan to be excluded from the Debtor's estate in bankruptcy. Congress enacted ERISA to regulate benefit plans, including the prevention of employer abuses. *Hanes*, 162 B.R. at 738 (quoting *In re Conroy*, 110 B.R. 492, 495 (Bankr.D.Mont. 1990)). Coverage of the statute is very broad and generally applies to any employee benefit plan by any employer engaged in commerce or activity affecting commerce. 29 U.S.C. § 1003(a)(1). Such employee benefit plans include pension plans.[8] The coverage for ERISA is not limited to tax qualified plans. Furthermore, as to all pension plans covered by ERISA, that statute requires a provision within such plan prohibiting benefits under the plan from being assigned or alienated. 29 U.S.C. § 1056(d)(1). Therefore plans may exist which are governed by ERISA, contain the anti-alienation provision required

---

6. 29 U.S.C. § 1001 *et. seq.*

7. In *Anderson v. Raine (In re Moore)*, 907 F.2d 1476 (4th Cir.1990), the Court of Appeals determined that "applicable nonbankruptcy law" as used in 11 U.S.C. § 541(c)(2) includes ERISA rather than being limited to state spendthrift trust law. In reaching this conclusion (subsequently confirmed in the Supreme Court's decision in *Patterson v. Shumate*), the Fourth Circuit examined a plan that was both governed by ERISA and qualified as a trust under 26 U.S.C. § 401. Although the opinion in *Moore*, may imply that

a plan must both be governed by ERISA and be qualified for tax deferral under 26 U.S.C. § 401 in order for benefits to be excluded from a debtor's estate (*see, Hall*, 151 B.R. at 419–20 n. 20), it appears the Fourth Circuit has not directly resolved the question.

8. However, where the sole beneficiary of an otherwise covered plan is within the statutory definition of "employer," courts have found the plan is not subject to ERISA. *Erricola v. Gaudette (In re Gaudette)*, 240 B.R. 649 (Bankr.D.N.H.1999).

by the statute and to which no tax qualification statute has, or is intended to have any applicability. This court cannot find a basis in the reasoning of the Supreme Court's opinion in *Patterson v. Shumate,* or the congressional policy reflected in ERISA to conclude that benefits of such plans are never protected under 11 U.S.C. § 541(c)(2).

■ However in this case, the benefits that the debtor asserts are outside of his bankruptcy estate and/or exempt are in a plan that was both intended and initially determined by the Department of Treasury to be a plan governed not only by ERISA but qualified under Section 401 of the Internal Revenue Code. It is apparent that where a tax qualified plan is involved, Congress intended the provisions of ERISA and the provisions of the Internal Revenue Code to work in consort. *E.g.,* 29 U.S.C. §§ 1201, 1202, 1203 and 1204. As to a plan that is intended to be governed by ERISA and qualified under 26 U.S.C. § 401, this court finds the reasoning of the Bankruptcy Court in the Western District of Michigan in its opinion *In re Hall* to be persuasive. In order to be entitled to the exclusion of benefits from the bankruptcy estate, the plan must comply with provisions of both statutes.

■ In this case the Pension Plan on paper complies with both statutes. It is clearly a plan governed by ERISA and contains the anti-alienation language mandated by that statute and by the Internal Revenue Code.[9] In addition, as drafted and published to the Internal Revenue Service,

it has been qualified for tax benefit purposes under 26 U.S.C. § 401.

However, the Pension Plan was not operated in compliance with the plan provisions as required by the applicable statutory requirements. There is no legitimate dispute of fact that at least one significant beneficiary of the Pension Plan was not an employee of the participating companies. Under the terms of the Pension Plan (and as required by 26 U.S.C. § 401 for tax qualification) only employees were eligible to be beneficiaries. Notwithstanding this requirement, Goldschein caused his wife, Kristina Goldschein, to be included as one of the largest beneficiaries under the Pension Plan.[10] Further, the loans to Goldschein violated Pension Plan provisions concerning the extent that such loans could be made to one participant, the requirements for approval of such loans, and the requirement of security for such loans.[11]

The acts in derogation of the Pension Plan's terms, which terms were required by the applicable statutes, were done by the Debtor herein in his capacity as Plan Trustee and (as argued by the Plaintiff) amounted to the Debtor using the Pension Plan assets and his interest therein as his own "personal piggy bank". At all times relevant to this case, the Debtor was the President of National Medical Services, Inc. (the employer), a plan trustee, the actor in the doing of the violative acts, and the beneficiary of such acts.

Respondents argue that the qualification certification by the Department of Treasury is a binding determination that the

---

**9.** 26 U.S.C. § 401(a)(13); 29 U.S.C. § 1056(d)(1).

**10.** Although Goldschein states in debtor's opposition to summary judgment that it is a matter of dispute as to whether Kristina Goldschein was the largest plan beneficiary, no evidence disputes the evidence in support of the fact that Kristina Goldschein is one of the largest beneficiaries. Exhibit C to Memorandum in Support of NationsBank, N.A.'s Motion for Summary Judgment on Objection to Exemptions.

**11.** Goldschein as Plan Trustee, subsequently attempted to convey mortgage interests on his property to the Pension Plan to secure loans which had been obtained. The Chapter 7 Trustee in this case successfully sought to avoid the subsequent securitization of the pension loans to Goldschein as an intentional transfer to hinder and delay a creditor. *Greenfeld v. Goldschein (In re Goldschein),* 241 B.R. 370 (Bankr.D.Md.1999).

Pension Plan is "ERISA-qualified" as that term is employed by the Supreme Court in *Patterson v. Shumate*. Under this argument, any plan which is drafted in compliance with the statutes will shield the benefits from creditors and the bankruptcy estate of a beneficiary, not withstanding that such beneficiary operates the plan with complete disregard to its terms and deals with the assets of such plan as if they were the personal property of the debtor/beneficiary. Such a holding would elevate form over substance.

■ As held by the United States Bankruptcy Court for the Middle District of Florida in the case of *In re Harris*, 188 B.R. 444, 449 (Bankr.M.D.Fla.1995), "it cannot be gainsaid that even if the plan is facially ERISA-qualified, it must be operated in full requirement of ERISA and also the Internal Revenue Code." In *Harris*, as in the case before this court, the debtor was the party who acted in derogation of the plan provisions and utilized funds as his "personal piggy bank", as opposed to the debtor being an innocent beneficiary.

In such circumstances, this court holds that such a debtor's benefits in a plan are not benefits shielded from the bankruptcy estate by the anti-alienation provision of a plan that the debtor has materially disregarded in its operation. The court recognizes that recently the United States Court of Appeals for the Fifth Circuit has opined that a negligent or intentional act of an ERISA plan sponsor, administrator or other fiduciary that results in disqualification for tax purposes of an ERISA plan does not result in exposing the debtor's benefits in such plan to inclusion in the bankruptcy estate. *Traina v. Sewell (In re Sewell)*, 180 F.3d 707 (5th Cir.1999). In so finding, the Fifth Circuit supports its decision upon a statement that it is the governance of the plan by ERISA and not the qualification of the plan under Title 26 of the United States Code (and hence not the disqualifying acts of the plan sponsor under Title 26), that determine the exclu-

sion of benefits from the bankruptcy estate. *Id.* at 712.

However, in the *Sewell* case the facts do not appear to include acts done by the debtor in material derogation of the plan. In the instant case, the Pension Plan provisions were all but ignored by the debtor, as the president of the plan sponsor, trustee of the plan, one of the largest beneficiaries, and spouse of an improperly designated beneficiary. To the extent that the broad statement in *Sewell*, under far different facts, is argued to require that the Debtor's benefits in the instant case before this court are covered by the exclusionary provisions of Section 541(c)(2) of the Bankruptcy Code, this court respectfully declines to follow such reasoning.

■ Under these precise circumstances, this court agrees with the conclusion of the United States Bankruptcy Court in the Middle District of Florida in its opinion in *In re Harris* and the more recent opinion of the United States Bankruptcy Court for the Southern District of Florida in the case of *In re Lawrence*, 235 B.R. 498, 508 (Bankr.S.D.Fla.1999). Where an abusive situation is created by the debtor through the misuse of the pension plan for the benefit of the debtor solely, the debtor's benefits therein are not protected under the paper structure of the pension plan.

■ Having concluded that the debtor's benefits in the pension plan became the property of the debtor's bankruptcy estate upon the filing of the petition, the court turns to the question of the allowance of the debtor's alleged exemptions of such benefits. The debtor claims such benefits as exempt pursuant to Section 11–504 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, applicable in bankruptcy by 11 U.S.C. § 522(b)(2). The Maryland exemption statute includes:

"any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan qualified under

§ 401(a)...of the United States Internal Revenue Code..."

MD. CODE ANN., CTS. & JUD. PROC. § 11–504(h)(1).

As to the applicability of the exemption, there is no question that it is the tax statute which governs the qualification for exempt status of benefits.

However, for the reasons set forth above in the discussion concerning exclusion from the estate, where the debtor as the president of the plan sponsor, plan trustee and beneficiary operates the qualified pension plan as his "personal piggy bank" in material derogation of the provisions of the plan and the qualifying tax statute, the debtor's benefits are not benefits within a qualified plan as intended by the Maryland Legislature in the enactment of Section 11–504(h)(1) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.[12] To hold otherwise would sanction an intentional fraud upon creditors by the use of paper plans to protect funds that were nothing more than assets available to the personal use of the debtor. This court finds no basis to conclude such an intent by the Maryland Legislature. Form will not govern over substance to protect a party acting in derogation of law. *See, In re Shady Grove Tech Center Associates Ltd. Partnership,* 216 B.R. 386, 391 (Bankr.D.Md.1998). For these reasons, this court holds that the benefits of the Debtor in this case under these facts are assets of the estate and are not exempt from the estate. An order in conformity with this opinion will be entered.

12. As the Maryland statute defines this exemption by reference to designated sections of Title 26 of the United States Code (The Internal Revenue Code), the provisions (and operation by the debtor) of the plan must comply without question with the tax qualification statute in order to be exempt.