**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-2944

———————

IN RE: ERIC S. GILBERT

JOHN M. MCDONNELL, as Chapter 7 Trustee,

Appellant

v.

ERIC S. GILBERT

———————

On Appeal from the United States District Court
for the District of New Jersey
(District Court Nos. 3-22-cv-05274; 22-cv-05910 and
3-22-cv-05911)
District Judge: Honorable Georgette Castner

———————

Submitted under Third Circuit L.A.R. 34.1 (a)
on June 25, 2024

Before: JORDAN, McKEE, and AMBRO, <u>Circuit Judges</u>

(Opinion Filed: October 24, 2024)

Richard J. Corbi
Law Offices of Richard J. Corbi
1501 Broadway
12th Floor
New York, NY 10036

Brian T. Crowley, Esq.
McDonnell Crowley
115 Maple Avenue
Suite 201
Red Bank, NJ 07701

      Counsel for Appellant

Andrea Dobin
McManimon Scotland & Baumann
427 Riverview Plaza
Trenton, NJ 08611

Michele M. Dudas
McManimon Scotland & Baumann
75 Livingston Avenue
Suite 201
Roseland, NJ 07068

      Counsel for Appellee

**AMBRO**, Circuit Judge

When Eric Gilbert filed for Chapter 7 bankruptcy, he listed his interest, approaching $1.7 million, in retirement accounts set up under two defined benefit plans (for ease of reference, we refer to the accounts and the plans jointly as the "Retirement Plans" or "Plans"). The question before us is whether Gilbert's creditors can collect from them because their operations allegedly flouted federal law. The Bankruptcy Court, in a well-reasoned opinion, concluded they were beyond the creditors' reach. On appeal, the District Court agreed in an equally well-crafted opinion. We affirm.

## I. Background

To understand this dispute, a brief primer on the laws of retirement benefits and bankruptcy is helpful. We start with the former. At issue here is the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Speaking generally, it governs many employer retirement plans. ERISA, 29 U.S.C. §§ 1002–03; Ronald J. Cooke, 1 *ERISA Practice & Procedure* § 2:1 to 9 (2024). At a high level, the statute protects participants by "establish[ing] standards of conduct, responsibility, and obligation" for those who offer and administer retirement plans, ERISA § 1001(b), in an effort to "protect participants[.]" *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987)). But ERISA is not

the sole means by which the federal Government regulates retirement benefits. The Internal Revenue Code ("IRC"), 26 U.S.C. § 1 *et seq.*, also includes substantial rules for retirement plans; the reward for plans that comply—or, as tax professionals say, qualify—is "favorable tax treatment." *Cooke*, *supra*, at § 1:3.

Also at issue in this case is the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* It offers "a simple bargain: [a] debtor can win a discharge of its debts" in return for "plac[ing] virtually all its assets on the table for its creditors." *Harrington v. Purdue Pharma L.P.*, 603 U.S. —, 144 S. Ct. 2071, 2077–78 (2024). In Chapter 7 cases like Gilbert's, the Code does so by creating a bankruptcy estate composed of almost of all the debtor's assets at "the commencement of a case[,]" Bankruptcy Code § 541(a), liquidating them, *id.* § 704(a), and distributing the proceeds to creditors. *Id.* § 726. In return, the Bankruptcy Court "shall" grant the debtor a discharge from its pre-bankruptcy debts, *id.* § 727(a), which prohibits collection efforts on those obligations. *Id.* § 524.

Certain types of assets are categorically excluded from the bankruptcy estate. Excluded assets are not liquidated to pay pre-bankruptcy debts in a Chapter 7 case. A debtor may retain them even as he is discharged from his pre-bankruptcy obligations. This case centers on one exclusion: § 541(c)(2), which protects a debtor's "beneficial interest . . . in a trust"[1] that is subject to a "restriction on . . . transfer . . . enforceable under applicable nonbankruptcy law[,]" also known as an anti-alienation provision. Rephrased, this means that bankruptcy

---

[1] No one disputes the Plans here, governed by ERISA, are trusts. *See Patterson v. Shumate*, 504 U.S. 753, 760 (1992).

4

respects rules protecting trust assets from a beneficiary's creditors.  If a creditor cannot access the trust outside bankruptcy, the assets remain out of its reach in bankruptcy.

Gilbert filed his Chapter 7 bankruptcy in 2021.  He disclosed the Retirement Plans and claimed they were excluded from his bankruptcy estate.  John McDonnell, the Chapter 7 trustee,[2] filed a complaint seeking a declaratory judgment that the Plans were, in fact, available to Gilbert's creditors.  The complaint alleged that their operation flouted rules in both ERISA and the IRC.  App. 1628–30 ("Virtually from its inception, the Debtor utilized the 401(k) Plan as an extra bank account without having to pay required taxes.").  As to the counts before us, the Bankruptcy Court granted motions to dismiss them without prejudice.  McDonnell filed an amended complaint, and Gilbert filed a motion to dismiss, arguing that his interests in the Plans were excluded from the bankruptcy estate per § 541(c)(2).  He noted that each Plan had anti-alienation language, which he said was "enforceable under" ERISA such that § 541(c)(2) applied.  McDonnell countered that it did not apply in light of the alleged violations of ERISA and the IRC.  The Bankruptcy Court granted Gilbert's motion with prejudice, and the District Court affirmed.  McDonnell appeals to us, and our jurisdiction follows from 28 U.S.C. § 158(d)(1).

## II. Analysis

---

[2] In Chapter 7 cases, a trustee is appointed as representative of the bankruptcy estate with an eye to maximizing the money distributed to creditors.  11 U.S.C. §§ 323, 701, 704.

## A. The Retirement Plans Are Excluded from Gilbert's Bankruptcy Estate.

While this is an appeal of a District Court decision, "we view the bankruptcy court's decision unfettered by the district court's determination." *In re Energy Future Holdings Corp.,* 990 F.3d 728, 736 (3d Cir. 2021) (quoting *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991)). We review without deference the Bankruptcy Court's legal analysis. *Id.* (citing *In re Tribune Co.*, 972 F.3d 228, 237 (3d Cir. 2020)). So we must affirm its dismissal of McDonnell's complaint if we conclude that it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Bankruptcy Court dismissed Gilbert's declaratory judgment claim because "a plain meaning reading of § 541(c)(2)" excluded the Retirement Plans from the bankruptcy estate even if they were operated contrary to ERISA and the IRC. App. 945–46. It believed its analysis followed *Patterson v. Shumate*, a Supreme Court decision holding that provision's reference to "applicable nonbankruptcy law" included federal law like ERISA. 504 U.S. 753 (1992), 758–59. The District Court affirmed on this reasoning.

But McDonnell claims that *Patterson* compels us to reverse. There, the Supreme Court stated that § 541(c)(2) excluded as bankruptcy estate property an interest in a retirement plan that "satisfied all applicable requirements of [ERISA] and qualified for favorable tax treatment under the [IRC]." *Patterson*, 504 U.S. at 755. While its decision did not

6

focus on compliance with ERISA and the IRC, it repeatedly used the phrase "ERISA-qualified." For example, it ended its opinion by declaring that "a debtor's interest in an ERISA-qualified pension plan may be excluded from the . . . bankruptcy estate pursuant to § 541(c)(2)[.]" *Id.* at 765.

That choice of words has led to confusion, as "ERISA-qualified" is "not a term of art and is not defined in the Bankruptcy Code, the IRC, or ERISA . . . . [I]t is not even a term used by employee benefit practitioners." J. Gordon Christy & Sabrina Skeldon, *Shumate and Pension Benefits in Bankruptcy*, 2 J. Bankr. L. & Prac. 719, 724 (1992). McDonnell encourages us to conclude a plan is "ERISA-qualified" only if it is tax-qualified and follows ERISA's rules. There is a split on this point, with some courts following McDonnell's view and others concluding that a plan is "ERISA-qualified" if it is governed by ERISA. *See In re Meinen*, 228 B.R. 368, 378–80 (Bankr. W. D. Pa. 1998) (summarizing split).

The meaning of "ERISA-qualified" in *Patterson* strikes us as beside the point. Even if we assume that McDonnell's read of that phrase is right (*i.e.*, a plan is only "ERISA-qualified" if it is tax-qualified) and that the complaint persuasively alleges that the Retirement Plans' operations were at loggerheads with ERISA and the IRC, Gilbert's interests in the Retirement Plans are nonetheless protected by § 541(c)(2).

That conclusion tracks *Patterson*'s basic rule of interpretation—the text of the Bankruptcy Code controls. The Court took the case to resolve the circuit split about whether § 541(c)(2)'s reference to "applicable nonbankruptcy law" included federal law. 504 U.S. at 766 (Scalia, J., concurring).

7

"[T]he plain language of the Bankruptcy Code and ERISA is our determinant." *Id.* at 757 (citing *Toibb v. Radloff*, 501 U.S. 157, 160 (1991)).

So, following the *Patterson* court's lead, we ask the question provided by the statutory text: whether, assuming (as McDonnell alleges) that the Retirement Plans did not comply with ERISA and the IRC, the former nonetheless provides an "enforceable" bar to alienation of Gilbert's interest in the Plans.

McDonnell argues that ERISA's anti-alienation language does not apply to retirement plans operated in violation of its commands.[3] He provides no statutory support for this proposition. And we see none in ERISA's text. It would be strange if a statute whose "principal object . . . is to protect plan participants and beneficiaries[,]" *Boggs v. Boggs*, 520 U.S. 833, 845 (1997), lowered its shield at the first violation. Simply put, McDonnell confuses two distinct questions: whether ERISA applies to (and so governs) the Retirement Plans and whether the Plans complied with

---

[3] It is unclear whether McDonnell claims that the Retirement Plans are not governed by ERISA at all. Construed generously, he does. But his sole argument on this point is an extended cite to *In re Kaplan*, 189 B.R. 882, 888–89 (E.D. Pa. 1995). McDonnell Br. 35–36. He did not do enough to preserve this argument for our review. "[W]e have consistently refused to consider ill-developed arguments" and will not break with that tradition here. *Barna v. Bd. of Sch. Dirs.*, 877 F.3d 136, 145 (3d Cir. 2017) (citations omitted). This argument forfeited, we proceed as the Bankruptcy Court and District Court did—with the understanding that the Plans are governed by ERISA.

ERISA's requirements. It cannot be the case that a retirement plan normally governed by ERISA escapes it by brazenly violating its rules, as McDonnell seems to suggest here. "[I]f extensive violations of a federal law made that law go away, the rules would be chimerical." *In re Baker*, 114 F.3d 636, 640 (7th Cir. 1997). So we agree with the decisions that conclude plans governed by ERISA are excluded from the bankruptcy estate under § 541(c)(2) because of the statute's anti-alienation command. *Id*. at 640 ("[V]iolations of ERISA do not make ERISA inapplicable . . . . [F]or purposes of *Patterson*, what matters is the application of ERISA [to the retirement plan], rather than observance of its rules."); *In re Handel*, 301 B.R. 421, 433 (Bankr. S.D.N.Y. 2003) (concluding that § 541(c)(2) protected interest in a retirement plan operated contrary to ERISA's rules because "a beneficiary's violation of ERISA is not a defense to the enforcement of ERISA's alienation prohibition").

Reviewing the IRC, we reach the same result: a retirement plan governed by ERISA that is not tax-qualified is still protected by ERISA's anti-alienation bar. "Nowhere in ERISA . . . is there a requirement that, to . . . be governed by [it], a plan must be tax[-]qualified. Indeed, the converse is true: An ERISA plan that is not or may not be tax[-]qualified nevertheless continues to be governed by ERISA . . . ." *Traina v. Sewell (In re Sewell)*, 180 F.3d 707, 711 (5th Cir. 1999). McDonnell provides us no authority to the contrary.

He nonetheless offers cases suggesting that the Retirement Plans are not protected by § 541(c)(2). One is *In re Goldschein*, a bankruptcy court ruling that a retirement "plan must comply with provisions of both" ERISA and the IRC to be excluded under § 541(c)(2). 244 B.R. 595, 601

9

(Bankr. D. Md. 2000).  That opinion started by noting that "Congress intended the provisions of ERISA and the provisions of the [IRC] to work in consort." *Id.*  However, Congressional intent is not self-executing: the statutory text controls.

That court did not perform its own statutory analysis, instead announcing that it agreed with other decisions' reading of the relevant law.  It relied on *In re Hall*, which is distinguishable: the pension plan there was "not subject to ERISA."  151 B.R. 412, 421 (Bankr. W.D. Mich. 1993). And while *Hall*'s analysis of *Patterson* and Sixth Circuit caselaw suggests that "ERISA-qualified" plans, as the term was used by the Supreme Court, must be both tax-qualified and governed by ERISA, *id.* at 417–20, that does not answer whether § 541(c)(2) applies to the Retirement Plans in light of their alleged non-qualification under the IRC.

*Goldschein* also looked to *In re Harris*, which emphasized that the debtor, who was also the plan administrator, "use[d] . . . the [retirement p]lan as a personal bank[,]" which "justifie[d]" concluding that § 541(c)(2) did not exclude the plan at issue from the bankruptcy estate.  188 B.R. 444, 450–51 (Bankr. M.D. Fla. 1995).  But *Harris* points to no statute or authority suggesting that ERISA's anti-alienation bar fails to protect from misbehaving plan administrators.[4]

---

[4] Without citing any statute or case law, the *Harris* court also stated that "it cannot be gainsaid that even if the plan is facially ERISA-qualified, it must be operated in full [compliance with] ERISA and also the [IRC]" to be excluded under § 541(c)(2). 188 B.R. at 449.  As noted above, we see no support in the text of ERISA or the IRC for that claim.

10

Instead, it cites cases dealing with retirement plans that were not governed by ERISA. *Id.* at 450.[5] In fact, it appears that ERISA's anti-alienation rule extends to malefactors in charge of retirement plans. *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376–77 (1990).

Finally, McDonnell makes an appeal to equity. If we affirm, Gilbert "will receive a windfall of over $1 million in a sham retirement account while living in Puerto Rico at the expense of his creditors." McDonnell Reply Br. 5. but the Supreme Court informs us that equity cannot be used to override bankruptcy's detailed scheme delineating the property of the bankruptcy estate, *Law v. Siegel*, 571 U.S. 415, 421–22 (2014), or ERISA's anti-alienation bar, *Guidry*, 493 U.S. at 376–77.

This result follows our rules of statutory interpretation. While § 541(c)(2) does not condition exclusion on tax qualification, the Bankruptcy Code allows the debtor to exempt certain retirement benefits if they are qualified under the IRC. *See, e.g.,* Bankruptcy Code § 522(d)(12) (allowing debtor to

---

[5] McDonnell's other authorities are similarly not on point. *In re Lane* is distinguishable because the plans there were not "subject to the provisions of ERISA." 149 B.R. 760, 766 (Bankr. E.D.N.Y. 1993). The decision in *In re Copulos* relied on an anti-alienation restriction found in New Jersey law—not ERISA—to exclude a pension plan from the bankruptcy estate under § 541(c)(2). 210 B.R. 61, 63–66 (Bankr. D.N.J. 1997). And *In re Yerian* asked whether a pension plan was *exempt* under § 522—not *excluded* under § 541—from the bankruptcy estate. 927 F.3d 1223, 1225–26 (11th Cir. 2019).

exempt "[r]etirement funds to the extent that those funds are in a fund or account that is exempt from taxation under . . . the [IRC]"). This "shows that Congress knew how to draft the kind of statutory language that [McDonnell] seeks to read into" § 541(c)(2) and simply decided not to do so. *State Farm Fire & Cas. Co v. United States ex rel. Rigsby*, 580 U.S. 26, 36 (2016).[6] We must "implement Congress's choices" as reflected by the language it used in the Bankruptcy Code, not "remake them." *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 178 (2023) (citing *Azar v. Allina Health Servs.*, 587 U.S 566, 580–83 (2019)).

To recap, the Supreme Court told us in *Patterson* that § 541(c)(2) means what it says: interests in trusts are not part of the bankruptcy estate if applicable law prohibits their alienation. That decision also teaches that ERISA, which governs the Retirement Plans, sufficiently restricts transfer to exclude interests in pension plans. McDonnell has not pointed us to any language in ERISA, the IRC or any other statute that disables those protections if a retirement plan violates ERISA's rules or is not tax-qualified. So § 541(c)(2) excludes the Retirement Plans, even if their operation did not comply with ERISA and the IRC. Accordingly, the Bankruptcy and District Courts correctly dismissed McDonnell's claim for declaratory judgment.

---

[6] *Patterson* used similar logic. Because other sections of the Bankruptcy Code explicitly reference state law standing alone, the Supreme Court read § 541(c)(2)'s general reference to "applicable nonbankruptcy law" to encompass both state and federal law. 504 U.S. at 758 ("Congress, when it desired to do so, knew how to restrict the scope of applicable law to 'state law' and did so with some frequency.").

12

## B. McDonnell's Other Arguments Are Unpersuasive.

1. Dismissals of Avoidance Actions. The amended complaint also sought to unwind various transactions related to the Retirement Plans. First, it targets Gilbert's 2020 divorce settlement with his ex-wife. It awarded Gilbert his ex-wife's share of the Plans (over $800,000). McDonnell claims this was a preferential transfer, an actual fraudulent conveyance, and a constructive fraudulent conveyance. It must be noted that McDonnell does not claim that the divorce settlement as a whole was avoidable; he solely objects to Gilbert's receipt of his ex-wife's share of the Plans because (McDonnell claims) she "had no right to . . . award her share of the Retirement [Plans] to" Gilbert. App. 1181. McDonnell also sought to unwind all transfers from Gilbert's business to the Plans over the prior decade.

The Bankruptcy Court dismissed these counts of McDonnell's initial complaint because "[t]here are no facts pled to establish that" the transactions at issue were "transfer[s from Gilbert] to a third party that must be clawed back." App. 1206. It dismissed these counts of the amended complaint for much the same reason, as none of those transactions could be avoided because they were not transfers of Gilbert's "interest . . . in property[.]" Bankruptcy Code §§ 547(b) (preferential transfer); 548(a)(1) (fraudulent conveyance). The District Court affirmed for this reason.

McDonnell's argument before us simply does not address these issues, and that is fatal to his claims. To state a claim for a preferential transfer or fraudulent conveyance, a

13

complaint must allege a "transfer" of the debtor's interest in property. Bankruptcy Code §§ 547(b); 548(a)(1). But Gilbert's receipt of funds (into the Retirement Plans) is not a transfer under the Bankruptcy Code, which defines a transfer as any "mode . . . of disposing of or parting with . . . an interest in property." *Id.* § 101(54)(D)(ii). And he did not "part with" this money—he received it; the transferred funds were his ex-wife's and business's property, not his. So McDonnell's arguments fail as a matter of law.

2. Denial of Leave to Amend. The Bankruptcy Court dismissed McDonnell's claims with prejudice in light of the "pervasive problems" it saw with his initial and amended complaints, including "faulty logic[.]" App. 884. That Court found it "disquieting that at many points . . . the Trustee's [McDonnell's] complaint and brief . . . fail[] to recognize . . . crucial distinctions" in fact and law. *Id.* at 855. The District Court affirmed because McDonnell "does not suggest that there are facts that could have been plead that would have altered the . . . analysis" of the proposed avoidance actions or creditors' ability to recover from the Retirement Plans. *Id.* at 33. Before us, he asks permission to file a further amended complaint "after additional formal discovery" and emphasizes our general policy allowing litigants to amend their complaints. McDonnell Br. 80.

We review the Bankruptcy Court's decision to dismiss McDonnell's complaint with prejudice for abuse of discretion. *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 234 (3d Cir. 2013). A court abuses its discretion when it makes an error of law (reviewed without deference), *Equal Emp. Opportunity Comm. v. City of Long Branch*, 866 F.3d 93, 98 (3d Cir. 2017) (citing *Chao v. Cmty. Tr. Co.*, 474 F.3d 75,

14

79 (3d Cir. 2007)), or makes a "clear error of judgment," which requires an appellant to show more than merely "a different result [could have] arguably be[en] . . . obtained when applying the law to the facts of the case," *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1341 (3d Cir. 2002) (quoting *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 195 (3d Cir. 2000)). If "no new factual allegations" could result in a viable claim, then a court does not abuse its discretion by concluding that "amendment would be futile." *Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 249–50 (3d Cir. 2023).

As discussed above, the Retirement Plans are excluded from the bankruptcy estate even if they were operated in violation of ERISA and the IRC, so no further allegations of rulebreaking would result in a viable claim on that count. And McDonnell cannot plead any facts turning Gilbert's ex-wife's interest in the Retirement Plans into his property or transforming his receipt of those funds into a "transfer" for purposes of the Bankruptcy Code. Further amendment of McDonnell's complaint would be futile.

3. Order Shortening Time. On August 26, 2022, McDonnell filed a notice of appeal to the District Court challenging the Bankruptcy Court's decision dismissing his claims. He submitted a designated record on September 8. In response, Gilbert filed a motion to strike certain items from the record on September 16. He subsequently filed a motion to shorten time on September 20. Gilbert noted that the first brief in the appeal was due on October 11 and hoped to resolve the scope of the record before appellate briefs were submitted to the District Court. The Bankruptcy Court granted the motion and held oral argument on October 4. McDonnell says the

15

motion should have been denied because there was no emergency requiring expedited briefing.

A bankruptcy court has discretion to manage its docket by shortening a notice period. Fed. R. Bankr. P. 9006(c)(1). "We will not interfere with a . . . court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 109 (3d Cir. 2019) (quoting *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (internal quotation marks omitted)). The District Court did "not find that [McDonnell] was substantially prejudiced" by the order shortening time. App. 14. Before us, he complains that the Bankruptcy Court's scheduling decisions favored Gilbert**,** but he (McDonnell) does not identify any prejudice (let alone substantial prejudice) flowing from this alleged favoritism.

4. Order Striking Items. The Bankruptcy Court granted Gilbert's motion to strike certain items from McDonnell's proposed appellate record. It concluded that the documents at issue were "irrelevant" because they "could not have formed the basis of [its] ruling" on the motion to dismiss, and including them "would only serve to potentially confuse" reviewing courts about "the very limited nature" of the dismissal ruling. App. 680. McDonnell asserts this was error because "an expansive record is warranted in these proceedings[,]" McDonnell Br. 29, and all the documents were "presented by [him] in [his] pleadings[.]" *Id.* at 22.

Federal Rule of Bankruptcy Procedure 8009(e)(1) makes clear that the Bankruptcy Court may decide disputes about the scope of the record on appeal. Neither party

16

identifies a standard of review for its decisions under that rule. But the question of whether the "record accurately discloses what occurred in the bankruptcy court," *id.*, strikes us as similar to whether evidence's "probative value" is outweighed by the risk of "confusing the issues . . . or needlessly presenting cumulative evidence," Fed. R. Evid. 403. We review those determinations for abuse of discretion, *Egan v. Del. River Port Auth.*, 851 F.3d 263, 275 (3d Cir. 2017), and we will apply the same standard here.

McDonnell argues that the Bankruptcy Court abused its discretion for two reasons. First, he claims that Court ignored our decision in *Nantucket Investors II v. Cal. Fed. Bank (In re Indian Palms Assocs., Ltd)*, 61 F.3d 197 (3d Cir. 1995). He reads it to require that a bankruptcy appellate record include any designated item in either "the contested matter at issue" or "the underlying bankruptcy case" itself. McDonnell Br. 22–23. Not so. While *Indian Palms* discussed the outer limits of the bankruptcy record, it did not require that every item in the record of a contested matter or bankruptcy case be included. 61 F.3d at 203–05.

Second, McDonnell claims that the Bankruptcy Court erred because, when considering disputes over the appellate record, "it is better to err on the side of caution, include the items, and allow the appellate court to determine the relevance of the designated items." *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 559 B.R. 692, 701 (B.A.P. 6th Cir. 2016). But here we are asked to review an order granting a motion to dismiss for failure to state a claim. It is generally incorrect to consider "evidence extrinsic to the complaint" in this posture. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 134 (3d Cir. 2016). Accordingly, the Bankruptcy

17

Court did not make a "clear error of judgment[,]" *Coleman.*, 306 F.3d at 1341, by striking portions of McDonnell's proposed record.

Estoppel and Due Process. McDonnell alleges that Gilbert disclosed his 2012 W-2 only "at the conclusion of mediation, despite representing to the Bankruptcy Court . . . that he had produced all the documents required and requested." McDonnell Br. 28. Accordingly, McDonnell asks us to use judicial or equitable estoppel to "bar [Gilbert] from using any evidence . . . that relied on . . . documents not previously disclosed to [McDonnell.]" *Id.* at 84.

Despite repeated requests, Gilbert also declined to tell McDonnell the identity of an administrator of the Retirement Plans. McDonnell claims that this violated his due process rights.

Both issues suffer the same defect. Our review as an appellate court is generally limited to the decisions identified in the notice of appeal, which we may construe liberally. Fed. R. App. P. 3(c)(1)(B); *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 183–84 (3d Cir. 2010). McDonnell's notice of appeal identifies three orders for our review: the order dismissing his complaint, the order shortening time, and the order striking items from the appellate record. A connection to the due process and estoppel arguments cannot be "fairly . . . inferred from [any] notice" of appeal here. *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977). So we will not consider them.

\* \* \* \*

We therefore affirm in all respects the District Court's order rejecting McDonnell's challenges to the Bankruptcy Court's decisions.